[Civ. No. 22950. Second Dist., Div. Two. July 2, 1958.]

JOHN W. NEVAROV et al., Appellants, v. GLENN E. CALDWELL, Respondent.

Franklin L. Knox, Jr., and George O. West for Appellants.

Arthur M. Reilly for Respondent.

ASHBURN, J.—Plaintiffs Nevarov appeal from judgment upon verdict for defendant Caldwell in a personal injury action, urging errors of law as the basis for reversal. The accident occurred on the Ridge Route, a four-lane highway,

running generally north and south and having two lanes for southbound traffic and two for northbound traffic. Three southbound cars (those of Odisio, Caldwell and Nevarov), and one northbound car (of Bissiri), were involved in a series of impacts. First the Odisio car, in the first or outside southbound lane, swerved, whirled around and came to rest facing to the north, the direction opposite to the one in which it had been traveling; however, some of the witnesses say it was facing west when it came to rest. Defendant Caldwell's vehicle hit the right side of Odisio's; also hit the rear end of the Nevarov automobile; both Caldwell and Nevarov crossed the double white line and Nevarov had a collision with Bissiri's northbound car in the center northbound lane; Caldwell stopped just north of Nevarov. Out of a group of claims and cross-claims emerges the action of John W. Nevarov and his wife Anna Nevarov against Caldwell. The appeal is from the judgment rendered in a second trial of the issues raised between these parties.

At the first trial James Nevarov, a minor, was a coplaintiff with his parents, John and Anna. No claim of contributory negligence was made against him and judgment went in his favor but against his parents. James' judgment became final and was satisfied. A new trial was granted the parents with no limitation upon the issues to be tried.

At the second trial, and here, the parents claim that the judgment in favor of James establishes conclusively in their favor the issue of negligence on the part of defendant Caldwell. They rely upon *Bernhard* v. *Bank of America,* 19 Cal. 2d 807 [122 P.2d 892], *French* v. *Rishell,* 40 Cal.2d 477 [254 P.2d 26], and *Garcia* v. *Garcia,* 148 Cal.App.2d 147 [306 P.2d 80], to support the argument that the judgment against Caldwell in James' case is admissible and conclusive against Caldwell upon the issue of his negligence because he was a party to James' action and mutuality is no longer of the essence of res judicata in this state. On this basis appellants urge that it was prejudicial error to submit to the jury the question of Caldwell's negligence and to fail to instruct them that that issue was established against him. Respondent makes a vigorous argument that the Bernhard case is not here applicable. In any event that decision plainly goes no further than to establish negligence of defendant (if it goes that far) and cannot have any bearing upon the issue of John Nevarov's contributory negligence, an issue here present but absent from James' case.

The court refused plaintiffs' request for an instruction that defendant was negligent and his negligence the proximate cause of the accident as a matter of law; it also left to the jury over plaintiffs' objection the solution of those questions as matters of fact. In order to sustain the appeal counsel makes the further contention that plaintiffs as a matter of law were free from contributory negligence and that the court erroneously left this issue to the jury as one of fact.

If the Bernhard doctrine is here applicable, plaintiffs were entitled to the requested instruction (for which evidentiary basis had been laid); its refusal would be error; the further question would then arise whether it resulted in a miscarriage of justice.

*Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, broadly and definitely holds that mutuality of estoppel is not essential to application of res judicata either as a bar or in its other aspect of collateral estoppel. At page 812 it is said: "The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. [Citations.] He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. (*Ibid.*) There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

"No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." At 813: "In the present case, therefore, the defendant is not precluded by lack of privity or of mutuality of estoppel from asserting the plea of res judicata against the plaintiff." In that instance Mrs. Sather authorized one Cook to draw upon her account in Security-First National Bank. Cook, without authority, opened an account with defendant's predecessor bank in the name of "Clara Sather by Charles O. Cook." Gradually her money was withdrawn from the Security account, redeposited in the other one, then transferred into a third account in defendant Bank standing in the name of Cook and his wife. After Mrs. Sather died Cook became executor, later resigned and presented his account which made no mention of the money in question. Helen Bernhard, and other beneficiaries of Mrs. Sather's will, objected to the accounting because it did not

include that money; the court held after a hearing that Mrs. Sather had made a gift of the disputed funds to Cook during her lifetime. Bernhard was later appointed administratrix with the will annexed and brought an action against the Bank of America to recover the deposited money upon the ground that it was indebted to the estate in that amount because the deposit was paid out without any authorization from Mrs. Sather. The Supreme Court, affirming a judgment for defendant, found there was privity between plaintiff, acting as administratrix, and the objectors in the probate proceeding and then disposed of the question of mutuality in the language above quoted. The question of the application of that case at bar must be examined in the light of the exact situation existing in the instant action.

Unquestionably the negligence of defendant Caldwell which caused or contributed to James Nevarov's injuries was identical with the negligence which his parents assert against defendant. In James' case it was not complicated by any claim of contributory negligence on his part and would fasten liability upon defendant though it operated only as a contributing proximate cause concurring with negligence upon the part of James' father, the appellant herein. With reference to the parents, however, defendant's negligence must have been the sole proximate cause of their injuries or defendant cannot be held liable. Thus his negligence takes on a different aspect when viewed by a jury in reference to the respective claims of James and his parents. And whether it would be fair to apply the Bernhard doctrine in the parents' case becomes a serious question. The judgment in favor of James was for $691.65; it was satisfied about 11 months after the parents had been granted a new trial upon their cause of action. If Bernhard is applicable to such a situation it would have been necessary for defendant to appeal from a judgment for an insignificant amount (compared to the claims of the parents) in order to keep the issue of his own negligence open for the second trial, to take an appeal which well might have been frivolous. Such a rule would be promotive of litigation, "would tend to defeat rather than to promote the objective of preventing vexatious litigation with its attendant expense both to the parties and the public" (quoting *Taylor* v. *Hawkinson*, 47 Cal.2d 893, 897 [306 P.2d 797]). But this case should not be decided upon that narrow ground.

This action is part of a larger pattern which has developed in personal injury cases in Los Angeles County and probably

768

elsewhere in the state. The attorney who has a difficult case or group of cases on his hands files in the municipal court an action for recovery from a single defendant for property damage or minor personal injuries in the expectation that liability will be easily and speedily established and the question of damages left as the only issue to be decided in the principal action or actions brought in the superior court because res judicata establishes defendant's liability. This strategy (quite legitimate if *Bernhard, supra,* has universal application) is applied to multiple injuries to different people arising from the same accident. This occurs repeatedly in situations developed by accidents such as the collision of two aeroplanes over the Grand Canyon; the injury to many passengers on the San Diego-Los Angeles line of a railroad where the train was wrecked and the engineer claimed a momentary blackout; the breaking of the St. Francis Dam many years ago, followed by a great number of claims against the City of Los Angeles; the collision between the Andrea Doria and the Stockholm off the New England Coast in recent years. As several commentators have pointed out, *Bernhard, supra,* if held applicable to such situations, means that a defendant who obtains a favorable judgment, or 10 of them, cannot use those judgments against other claimants because the want of mutuality would spell absence of due process if the judgments were pleadable in bar or estoppel. But the plaintiff in the eleventh case is fortunate enough to establish liability and the defendant is confronted by a conclusive adjudication of its own negligence in the next 10 or 20 cases,—this being due to the fact that mutuality is not necessary and it has had its day in court, in fact 11 of them (none of which resulted adversely except the eleventh). This looks like the scales of justice are weighted in favor of the plaintiff. That our Supreme Court meant no such lopsided justice seems reasonably plain from an examination of its rulings later than *Bernhard, supra.*

Our statute, Code of Civil Procedure, section 1908, subdivision 2,[1] declares mutuality of estoppel to be of the essence of res judicata. The Supreme Court in departing from that

---

[1] Code Civ. Proc., § 1908, subd. 2: "In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

concept in *Bernhard, supra,* did so upon the ground of public policy, saying in part: ''The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. (See cases cited in 38 Yale L. J. 299; 2 Freeman, Judgments (5th ed.), § 626; 15 Cal.Jur. 98.) The doctrine also serves to protect persons from being twice vexed for the same cause. (*Ibid.*)'' (P. 811.) See also as to the basis of the rule and its limitations, 50 C.J.S., § 592, p. 11; 30A Am. Jur. § 326, p. 373. In determining the extent to which this state has gone in abolishing the test of mutuality of estoppel it is also well to keep in mind the fact that ''[i]t is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court.'' (*Porter* v. *Bakersfield & Kern Elec. Ry. Co.,* 36 Cal.2d 582, 590 [225 P.2d 223].) ■ ''[I]t is a familiar rule that expressions used in judicial opinions are always to be construed and limited by reference to the matters under consideration, and that they cannot be safely applied in their largest and most universal sense to dissimilar cases.'' (*City of Pasadena* v. *Stimson,* 91 Cal. 238, 250 [27 P. 604].)

■ The Supreme Court has recognized that the public policy underlying res judicata dictates that the rule yield to considerations showing that its application would result unjustly. ''But in rare cases a judgment may not be res judicata, when proper consideration is given to the policy underlying the doctrine, and there are rare instances in which it is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy.'' (*Greenfield* v. *Mather,* 32 Cal.2d 23, 35 [194 P.2d 1].) ■ '' 'The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment. . . . This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case.' (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 18 [193 P.2d 728].)'' (*Estate of Charters,* 46 Cal.2d 227, 235 [293 P.2d 778].) To the same effect, see *Guardianship of Di Carlo,* 3 Cal.2d 225, 235 [44 P.2d 562, 99 A.L.R. 990]; *Natural Soda Products Co.* v. *City of Los Angeles,* 109 Cal.App.2d 440, 446 [240 P.2d 993]; *Estate of Spinosa,* 117 Cal.App.2d 364, 369-370 [255 P.2d 843].

An examination of later rulings of the Supreme Court indicates that it does not entertain the view that the Bernhard doctrine is to be universally applied regardless of consequences.

In *Leipert* v. *Honold,* 39 Cal.2d 462 [247 P.2d 324, 29 A.L.R.2d 1185], there were five actions for death and for personal injuries against the same defendants which resulted in small verdicts for the respective plaintiffs. Defendants' motion for new trial was denied but plaintiffs Leiperts' motion for new trial upon the sole issue of damages was granted as to Denny Leipert. This was held upon defendants' appeal to be error because the record showed a series of compromise verdicts and hence there had been no actual decision of the major issue of liability. Mr. Justice Carter dissented, urging *inter alia* that, as there was no appeal in the death cases and those judgments had become final, "[i]t would be idle to send the case back for a new trial on all of the issues, including liability, because the rule of res judicata would be applied, and there would be nothing left to try except damages—the very issue embraced in the limited new trial which the trial court granted. That res judicata is pertinent to the case is clear from the principles enunciated in *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 812 [122 P.2d 892], where this court said: 'There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation. . . .' The identical issue is whether defendant driver was negligent and was his negligence the proximate cause of the collision. The answer is yes in the four death actions. There are four final judgments on the merits of that issue. The party against whom the prior adjudications are asserted is the same." (P. 479.) It has been argued by at least one reviewer and by respondent herein that, as the majority opinion does not mention this argument or the Bernhard case, the court impliedly and necessarily rejected its application to personal injury actions. We find, however, that the silence of the opinion merely reflects that of the briefs upon this subject and we think it cannot be said that Leipert does amount to a ruling upon the point. If there was no plea of res judicata before the court (and the briefs seem to indicate that such was the case), there was no occasion for the majority of the court to surmise that one would be interposed later, or to pass in advance upon the effect of such a supplemental plea if interposed. In fact, the court never reached the point urged

by Mr. Justice Carter because the parties stated that they wished the judgment to stand if a limited new trial was not to be had. "It is clear, therefore, that all parties have deliberately waived any rights to a reversal of the judgment. Under these circumstances, the judgment should be affirmed." (P. 471.)

*Taylor* v. *Hawkinson, supra,* 47 Cal.2d 893. Three verdicts in favor of plaintiffs in personal injury actions were found to have been for inadequate amounts. Only one plaintiff applied for a new trial, which was granted. Upon the new hearing plaintiff sought to limit the evidence to the issue of damages because the judgments in favor of the other plaintiffs had became final and hence operated as res judicata. The court, speaking through the author of the Bernhard opinion, held that all the verdicts were compromises and, as the issue of liability had not been determined, Bernhard was not controlling. At page 896, it is said: "Accordingly, had defendant or plaintiff's husband and the driver moved for a new trial, it would have been granted, and their failure to do so was tantamount to accepting the jury's compromise as their own. [Citations.] Regardless of the effectiveness of such a compromise in extinguishing the causes of action or in settling the rights directly involved therein [citations], it does not constitute such a determination of the issues involved as to render them res judicata where distinct rights are sought to be litigated in a separate cause of action. [Citations.] To hold otherwise would tend to defeat rather than to promote the objective of preventing vexatious litigation with its attendant expense both to the parties and the public. Defendant did not have his day in court during the first trial on the issue of liability, and plaintiff can now justify making that judgment binding upon him in her action only on the ground that he had an opportunity to attack it. Had he done so, more rather than less litigation would have ensued, and plaintiff would have gained nothing. Defendant did not vex her by seeking a redetermination of an issue once decided, but sought and secured only the right to have the issue of liability determined once after plaintiff by securing a new trial on all issues had established the propriety thereof." This is but an application of the philosophy of the Greenfield case, *supra,* that res judicata is not to be applied "so rigidly as to defeat the ends of justice or important considerations of policy." (32 Cal.2d at 35.)

In *Estate of Miller,* 104 Cal.App.2d 1, 17 [230 P.2d 667], the court said: ''An analysis of the Bernhard case shows that while it uses broad language which might indicate that the requirement of mutuality has been completely abandoned in res judicata cases, it is only in cases where there is a real privity to the party against whom the plea is asserted that it *actually is not required.''* The Supreme Court denied a hearing.

It is a fair conclusion that the later rulings of that court evince no inclination to enlarge the application of Bernhard to dissimilar situations or to give it universal import. The following cases cited by the litigants throw no additional light upon our present problem: *French* v. *Rishell, supra,* 40 Cal.2d 477; *Garcia* v. *Garcia, supra,* 148 Cal.App.2d 147; *Quinn* v. *Litten,* 148 Cal.App.2d 631 [307 P.2d 90].

The general rule applicable to situations such as that presented at bar is thus stated in an annotation found in 133 American Law Reports, at 185: ''With but few exceptions it has been held, in cases in which the question has arisen, that a judgment for the plaintiff in an action growing out of an accident was not res judicata, or conclusive, as to issues of negligence or contributory negligence, in a subsequent action growing out of the same accident, by a different plaintiff against the same defendant.'' Most of the decisions cited in support of the text expressly or impliedly rest upon the mutuality concept. Illustration 15, under section 93, Restatement of Law of Judgments, at page 466 says: ''A and B are passengers in a car driven by C which collides with a car driven by D. A brings action against D and obtains judgment on the ground that D was negligent. This finding is not res judicata in a subsequent proceeding brought by B against D.''

In determining whether this state should now depart from the stated rule (which really is an open question) the courts are required to pass upon a matter of public policy.

Professor Brainerd Currie of the University of Chicago Law School discusses the Bernhard case in an article entitled *''Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,''* 9 Stanford Law Review 281. In the concluding paragraph, at page 322, he says: ''The *Bernhard* decision is sound, not only on its facts but in its deliberate excursion beyond the strict necessities of the case for the purpose of stamping out the requirement of mutuality.'' The discussion starts with suppositious statements, as follows: ''An express train speeds through the night. Suddenly, as it enters a curve,

the locomotive leaves the rails, followed by half a dozen tumbling passenger cars. Fifty passengers are injured. Fifty actions for personal injuries are filed against the railroad—some in California courts, some in federal courts in California, some in other state and federal courts. The first of these to be reached for trial is in a California court. A full trial is had on the issue of the railroad's negligence, and the result is a verdict and judgment for the plaintiff. The judgment becomes final. What is the status of the forty-nine remaining actions?'' (P. 281.) At page 285 it is said: "It does not follow, however, that the forty-nine remaining plaintiffs in our hypothetical case may plead the judgment in the first case against the railroad. Those who would read such a meaning into the *Bernhard* decision overlook a fundamental fact. Judges, and especially enlightened and perceptive judges as those who could reach such a decision, will confine the authority of prior opinions to what was necessarily decided for purposes of the case then in hand, notwithstanding language which was unnecessarily broad. What the California Supreme Court did in the *Bernhard* case was to sweep aside the supposed requirement of mutuality when it loomed as an impediment to a just result in the case before the court, and to declare that it saw no virtue in the requirement of mutuality for its own sake. It does not follow that every case in which the result was formerly justified on the ground of 'lack of mutuality' must now be decided differently, even though it can be brought within the general language of the *Bernhard* opinion.

"Let there be no doubt that the facts of our hypothetical case can be brought within the language of the *Bernhard* decision. . . . Yet I predict with confidence that the Supreme Court of California will *not* hold that the former judgment is res judicata in these circumstances." The burden of the author's argument is that the Bernhard doctrine should be confined to use for defensive purposes and should not be an instrument of offense; in other words, should be used as a shield and not a sword.

Volume 57, Harvard Law Review, 98, 104: "Thus, where in a suit by A against B it is found that B is negligent, the judgment is not conclusive against B in a subsequent action by C who was hurt at the same time and by the same conduct. To apply the alleged tendency to this situation would mean that where a defendant was sued by forty people who were hurt in an explosion caused by the defendant, none of the

actions being consolidated, the first adverse judgment would conclude the defendant on the question of his negligence in all subsequent actions, although in all cases prior to the judgment he had been successful.

"The idea that in general such an alleged rule should not be applied is not based on any belief that there must be 'mutuality of estoppel.' It results from the general principles of our system of litigation from which the rules of res judicata have evolved. These principles would seem to require that a party to an action should risk the loss of rights or the creation of liabilities only with reference to his adversaries, except in the rare case where the limitation would adversely affect relations between the adversary and a third person. This exceptional situation exists where an action is brought unsuccessfully by or against a person who, if the judgment were against him, would be under a duty of indemnity or contribution. It does not exist where there is no such duty of indemnity or contribution or where the first action is brought by or against a person who is only secondarily liable. Identity of issue in the two cases is not sufficient to bind the unsuccessful party in reference to all subsequent adversaries.'' We do not consider that Bernhard is confined to indemnity situations for its language shows that such is not the case.

The fact that the question of res judicata arose from a judgment favorable to a coplaintiff in a single case is not controlling in either direction, nor is the view entertained by the trial judge who granted the new trial to these appellants important. James' cause of action was separate from that of the parents; it was presented in the same action merely as a matter of procedural convenience; it remained a separate cause and the judgment upon it was essentially separate, just as if obtained in an action brought by James alone. When the trial judge granted a new trial upon all issues he had exhausted his function in the premises; he had nothing to do with the evidence to be received upon the retrial; what he thought about that subject is immaterial. Moreover, James' judgment had not become final at that time and it is unlikely that the judge had in mind any potential supplementary complaint alleging a subsequently accruing res judicata.

It becomes necessary in this case to declare the public policy of this state upon the application of the rule of res judicata to multiple claims of different persons for personal injuries or property damage against a single defendant or set of defendants growing out of a single accident. We hold

that res judicata does not apply to those situations; that such an extension of the doctrine would be promotive of litigation and in subversion of sound principles of judicial administration looking to equal justice for all. ▮ There was no error in refusing the instruction which appellants sought upon this subject.

▮ There can be little doubt about defendant's negligence in point of fact. The accident occurred on February 1, 1953, about 7:30 p. m., after dark. The scene is the Ridge Route, a short distance north of Newhall in Los Angeles County. Some witnesses say the highway was straight and some that it curved slightly to the west; all agree that it was downgrade. First Mrs. Odisio, southbound, lost control of her car for some unexplained reason; it skidded, turned around and came to rest on the west shoulder, according to her testimony, or on the outside southbound lane and partially blocking it, as related by most of the other witnesses. Mrs. Odisio said it was headed north when it came to rest; the police say it was headed west. At any rate she and her companion, Mrs. Avery, sat in the car after turning the headlights off and the parking lights on, and watched cars coming toward them from the north. It was dark and all had their headlights on. Two or three cars passed them without incident. Defendant's car, a Nash, was in the inside lane (lane 2), and traveling at 60 to 70 miles an hour, according to Mrs. Odisio; at 40 to 50 miles in defendant's own estimation. He was seen when some 200 to 300 feet to the north by Mrs. Odisio and Mrs. Avery. There were two cars running along together; one of them would be ahead at times and then they would run along side by side; both were swerving back and forth from right to left; Caldwell seemed to be trying to pass the other car, according to Mrs. Odisio. Both ladies said that Caldwell's car went over onto the other side of the highway, came back and turning counterclockwise slammed into their car. It was stipulated that the Odisio automobile was damaged in the right side; also that defendant's car hit it and was damaged on its own rear right side. At approximately the same time, and probably before collision with the Odisio vehicle, the front of defendant's car hit the rear of plaintiffs' car, a Chevrolet, which had pulled out of the outside southbound lane into the inner lane in order to pass the Odisio car. Both Caldwell and Nevarov lost control of their cars, which crossed the double line where the Nevarov car collided with the Bissiri Ford, traveling north in the inner northbound lane. Defendant's car

stopped just north of plaintiffs' in that same lane. It was stipulated that plaintiffs' car was a total loss.

Plaintiff, John W. Nevarov, testified that he had been traveling south in the outer lane, saw another car ahead of him pull around the Odisio car and pass it, looked in his rear view mirror, saw that all was clear behind, pulled into the center lane to pass Odisio and as he did so was hit in the rear end by a car which proved to be defendant's.

Mrs. Avery's version was somewhat different from that of Mrs. Odisio, for the latter saw the cars coming down the road almost side by side, both swaying from lane to lane. Mrs. Avery saw three cars in a row in the inner lane; the last one, defendant's, swung around to pass the others. Both saw it go to the center of the highway, then to the west shoulder, then back again, spin around counterclockwise and hit them on the right side, then cross the double line where Mrs. Avery heard another crash. She, like Mrs. Odisio, said defendant's car was going 65 to 70 miles an hour. Neither of them was able to describe the course of the Nevarov car because they were intent upon the approach of the Caldwell vehicle.

Defendant Caldwell testified that, going 40 to 50 miles an hour and driving in the center lane all the time, without swerving back and forth, he became aware of something going on ahead of him; saw tail lights of Mrs. Odisio's car, which was across the highway headed west; he slowed his speed and could have stopped before reaching Odisio; another automobile ahead of him was slowing its speed; at this point his recollection of ensuing events ceased, according to his testimony. No head injury or unconsciousness or other cause for loss of memory through the accident having been shown, an inference of due care on his part could not arise. (*Ireland* v. *Marsden,* 108 Cal.App. 632, 643-644 [291 P. 912] ; *Bergman* v. *Bierman,* 138 Cal.App.2d 692, 695-696 [292 P.2d 623].) Defendant did testify that he saw no vehicle change lanes or cut in front of him before he lost his recollection, saw no car in front of him except Odisio's, and had no knowledge of running into the Odisio automobile or the plaintiffs' automobile; his first knowledge of the accident was the fact of being thrown out of his seat. It was stipulated that the front of his automobile hit the back of plaintiffs'. There is nothing in Caldwell's testimony to overthrow the plain inference of negligence that arises from this combination of facts. The showing of his negligence is clear. We do not see that the verdict for defendant could have been based upon a finding of absence of

negligence on his part; it must have been prompted by a finding of contributory negligence (which will be discussed presently). Such being the case, the failure to instruct that defendant was negligent as matter of law (assuming plaintiffs were entitled to such an instruction) cannot be said to have worked a miscarriage of justice, for we cannot say that a different result probably would have occurred if the assumed error had not been committed. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

■ Appellants argue vigorously that a finding of contributory negligence on the part of Mr. Nevarov, the driver, is not sustainable upon this record; that as matter of law there was no contributory negligence on his part. This argument is built mainly upon his own testimony which is said to be uncontradicted. It must be considered in connection with other testimony and reasonable inferences therefrom, and the rule that the jury properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material. (*Bechtold* v. *Bishop & Co., Inc.*, 16 Cal.2d 285, 291-292 [105 P.2d 984]; *Estate of Pelton*, 140 Cal.App.2d 512, 516 [295 P.2d 483].)

Mrs. Nevarov was dozing in the car and unable to throw any light upon the accident; it was stipulated that Mrs. Caldwell, if called as a witness, would testify that she had no recollection of the accident. Other witnesses were unable to do much better with respect to Mr. Nevarov's conduct. He testified that he was driving in the outside lane (No. 1) going 40 to 45 miles an hour; his Chevrolet was in good condition in all respects; he was following another car at a distance of about 300 feet; he noticed an obstacle ahead, looked into his mirror and saw lights behind; traffic was light; the car ahead skidded and almost stopped, then pulled over and started to pass the Odisio vehicle; plaintiff released the throttle, stuck his hand out, saw the lights behind, applied his brakes and started slowly to pull to the left to pass Odisio; the lights behind were ''where he could notify them'' and there was plenty of time for them to see him; the lights were back in the distance; they were about as far behind him as he was behind the car immediately preceding him, which would be about 300 feet; plaintiff could have stopped in his lane (No. 1) before reaching the Odisio car, but he decided to follow the other vehicle around it; as he was making this move he

was struck in the rear end by defendant's car. His deposition said he was 200 feet from the Odisio automobile when he was hit; that he was just about passing it. The deposition also said that he was a half mile from point of impact when he saw headlights in his mirror; they were then 500 to 600 feet behind him; at another time he said they were about the same distance as he was behind the car he was following; he was then figuring on trouble ahead; he did not know whether he again looked in his rear view mirror; he could not recall whether he looked again in the mirror after he put out his arm and applied his brakes. It may have been "a few seconds" before the car ahead skidded that he last looked in his rear mirror. Of course he did not and could not know the speed of the approaching lights or how far they were behind, but normally he could tell whether they were traveling fast and whether they were gaining on him. If going 70 miles an hour an object covers 210 feet in two seconds and 315 feet in three seconds; one going 45 miles travels 135 feet in two seconds or 202½ feet in three seconds. Plaintiff should have seen, but apparently did not, that the cars behind were gaining on him, and that both or one of them were or was swerving or switching from side to side; that one went over to the west shoulder, then east across the double line, then back in his direction, which things were seen by Mrs. Odisio and Mrs. Avery. At least the jury had the prerogative of drawing those inferences. One who changes lanes must use reasonable care to ascertain that it can be done safely. (Veh. Code, §§ 526, subd. (a), and 544, subd. (a).) It is not necessary that he absolutely ascertain that the movement can be successfully executed, but it is obligatory upon him to use reasonable care to that end. (*Washam* v. *Peerless Automatic etc. Co.*, 45 Cal.App.2d 174, 177 [113 P.2d 724]; *Spear* v. *Leuenberger*, 44 Cal.App.2d 236, 247 [112 P.2d 43]; *Chambers* v. *Spada*, 133 Cal.App.2d 231, 236 [283 P.2d 1067]; *Butigan* v. *Yellow Cab Co.*, 49 Cal.2d 652, 656 [320 P.2d 500].)

 It is a fair inference that plaintiff cut in front of defendant's automobile without using reasonable care to ascertain that he could do so safely. Presumptively the jury so found. It cannot be said that plaintiff was free of contributory negligence as a matter of law.

 Appellants contend that it was error to give the following instruction at defendant's request: "The mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action, was

negligent.'' The phrasing is almost identical with that found in *Barrera* v. *De La Torre,* 48 Cal.2d 166, 170 [308 P.2d 724], and *Phillips* v. *Noble,* 50 Cal.2d 163, 166 [323 P.2d 385]. The argument seems to be that the fact of a rear end collision is some proof of negligence on defendant's part and hence the instruction was improper under the recent decisions of *Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153 [323 P.2d 391], and *Phillips* v. *Noble, supra,* 50 Cal.2d 163. No request for a res ipsa loquitur instruction was made by plaintiffs and the above review of the evidence shows that there was no occasion for such an instruction; that the participation of plaintiff in causing the accident, according to his own testimony, was such as to preclude application of res ipsa.

The following passage from *Phillips* v. *Noble, supra,* at pages 166-167, is apposite and determinative here: ''We have recently held that, in the absence of a request for instructions on the doctrine of res ipsa loquitur, it is not reversible error to give the instruction on the mere happening of an accident if the application of the doctrine depends upon the determination of disputed facts. (*Barrera* v. *De La Torre,* 48 Cal. 2d 166, 170 et seq. [308 P.2d 724].) In such a case a *request* for appropriate instructions on the doctrine is essential so that the court may be apprised of the plaintiff's reliance on it and have an opportunity to explain the relationship between the doctrine and the instruction on the mere happening of an accident. In the absence of such a request, the only situation in which the giving of the challenged instruction was held to constitute error was where the res ipsa loquitur inference arose as a matter of law from facts conceded by the defendant. (*Jensen* v. *Minard,* 44 Cal.2d 325, 329 [282 P.2d 7].)

''Here no instruction on res ipsa loquitur was requested or given, and the case is not one in which the doctrine may be applied as a matter of law on the basis of undisputed facts.''

No reversible error appearing herein, the judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 28, 1958. Carter, J., was of the opinion that the petition should be granted.