**Florence P. MACKRIS, Administratrix of the Estate of James Mackris, Plaintiff-Appellee,**

**v.**

**John A. MURRAY, Defendant-Appellant.**

**No. 17891.**

United States Court of Appeals
Sixth Circuit.

July 12, 1968.

William D. Booth, Detroit, Mich., for appellant, Ward, Plunkett, Cooney, Rutt & Peacock, Detroit, Mich., on the brief.

John Boghosian, Southfield, Mich., for appellee.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

The question here for decision is whether Michigan, contrary to its earlier holding, would now allow a plaintiff to substitute collateral estoppel for proofs as a means of establishing a defendant's liability; this to be so, notwithstanding that the estoppel is not mutual. Plaintiff-appellee, Florence P. Mackris, is administratrix of the estate of her deceased husband, James Mackris. Her complaint charged that he died from injuries received when a vehicle he was driving was struck by an automobile then being negligently driven by defendant-appellant, John A. Murray. The vehicle being driven by Mackris was owned by his employer, Northland Chrysler-Plymouth, Inc., an automobile agency of Oak Park, Michigan. The accident occurred in Monroe County, Michigan, on March 9, 1965.

Northland Chrysler-Plymouth, Inc., brought suit in the Common Pleas Court of Detroit against appellant Murray for damages to its automobile, allegedly caused by the negligence of Murray. Murray denied negligence, and asserted that the deceased Mackris had been guilty of contributory negligence. The case was tried to a jury which gave a verdict to the Northland agency for a stipulated amount of damages. The issue of contributory negligence of the deceased Mackris was not submitted for the consideration of the jury.[1]

The appellee-administratrix then commenced this suit in the District Court at Detroit,[2] charging appellant with liability for her husband's death. Appellant denied negligence and charged the deceased Mackris with contributory negligence. After the cause was at issue, plaintiff, employing Rule 56 of the Federal Rules of Civil Procedure, moved for summary judgment as to liability upon the asserted ground that the judgment obtained in the Common Pleas Court by Northland Chrysler-Plymouth, Inc., for the damage to its vehicle foreclosed Murray from defending the administratrix' action except as to the amount of damages. The motion asserted that in the property damage suit "the issue of Defendant's negligence and liability for the damages were the same and were fully adjudicated in that proceeding"; the motion further averred that the Common Pleas Court judgment "would work as a collateral estoppel to this same defendant, John A. Murray, in this present action." The District Judge granted plaintiff's motion. We reverse.

■ Substantive Michigan law controls resolution of the legal question presented. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188

(1938). In his memorandum opinion, the District Judge observed:

"The Michigan Supreme Court has not directly faced the issue in recent years. As late at 1950 in Clark v. Naufel, 328 Mich. 249, 250 [43 N.W.2d 839], mutuality of estoppel was still required."

He also recognized that had the Common Pleas case resulted in judgment for defendant, plaintiff would not be estopped —this because she was not a party to it. He said:

"It is clear that had the judgment in the common pleas case gone against Northland Chrysler-Plymouth, Inc., Plaintiff here could not be bound by it because she was not a party to the action and had no right to contest it. Makariw v. Rinard, 336 F(2) 333 (3rd Cir. 1964); Rice v. Ringsby Truck Lines, 302 F(2) 550 (7th Cir. 1962); Restatement, Judgments, § 96, comment j (1942)."

If we should assume that the Supreme Court of Michigan would now stand by its opinion in Clark v. Naufel, supra, should the question before us be presented to it, plaintiff's motion here must fail. In that case the plaintiff, Grace W. Clark, sued James C. Naufel for injuries received in a collision between her car and one driven by him. In an earlier case, Rosemary Naufel, wife of defendant James C. Naufel, and a passenger in his car, had sued the plaintiff Grace W. Clark in the Circuit Court of Oakland County, and recovered a judgment against her. The Michigan Court said:

"While it is true decision in the Oakland county case must have been based upon a finding of fact that Grace W. Clark, Plaintiff herein, was guilty of negligence which was a proximate cause of the accident involved in the

---

1. The parties disagree as to the reason for this. Plaintiff claims that the Common Pleas judge found as a matter of law that deceased was not guilty of contributory negligence. Defendant argues that the Common Pleas judge was of the view that, as a matter of law, contributory negligence was not available as a defense in the Common Pleas action. For our decision, we need not resolve this disagreement.

2. Appellant Murray's Ohio citizenship provided the needed diversity.

instant case, nonetheless that circumstance could not successfully be urged as estoppel barring plaintiff's right to recover in the instant case. This is true because the same parties or their privies were not the same litigants involved in the respective cases; and the record made in the respective cases presumably may be very different." 328 Mich., at 256, 43 N.W.2d, at 842.

Such Michigan law, when announced, was contrary to the District Court's ruling which we now review.

The District Judge concluded that we should consider that although Clark v. Naufel is the last clear expression by the Michigan Supreme Court on relevant law, that Court would overrule said case should its rule now be put in question. He arrives at this conclusion by considering that a later Michigan case, Jones v. Chambers, 353 Mich. 674, 91 N.W.2d 889 (1958), and a decision in the District Court for the Western District of Michigan, Halvorsen v. Grain Dealers Mutual Insurance Company, 210 F.Supp. 73 (W. D.Mich.1962), as well as the liberal trend in decisions from other jurisdictions (see, e. g., Graves v. Associated Transport, Inc., 344 F.2d 894, (4th Cir. 1965); United States v. United Airlines, Inc., 216 F.Supp. 709, (E.D.Wash., D.Nev., 1962)), justifiably forecast such action by the Michigan Supreme Court. We disagree.

We at once observe that Justice Edwards,[3] author of Jones v. Chambers, did not even mention Clark v. Naufel in his decision, much less suggest that its vigor was impaired. The case arose out of a collision between an oil truck owned by Jones and a car owned and driven by Chambers. Jones sued Chambers in Shiawassee County for damages, A later action was brought in Isabella County by Chambers against Jones for his damages suffered in the same collision. This Isabella County case went to trial first and resulted in a judgment for Chambers— plaintiff therein. When the Shiawassee County case came to trial, Chambers, as

defendant therein, was allowed to rely *defensively* upon the judgment he had obtained in Isabella County as an adjudication of his freedom from negligence. Justice Edwards agreed with the circuit judge that the issues of negligence and contributory negligence had been "finally determined by verdict and judgment" in the Isabella County case.

It will be seen that the contests in Shiawassee County and Isabella County involved substantially the same parties— the same adversaries—their positions merely being reversed in the respective cases. The insurers, as subrogees of one of the suing plaintiffs in each case, were different but these subrogation rights were derivative—derived from the rights of their respective insureds. In the case at bar, the party plaintiff in the Common Pleas action and the plaintiff in the District Court action were not the same, and had no common interests. The Common Pleas action was solely to recover property damages suffered by the owner of the involved automobile; the District Court case was a different plaintiff's action to recover for the injuries and death of her husband. In *Jones,* the Michigan Supreme Court quoted language of the trial judge which emphasized that the opposing parties were the same people.

"To permit this might result in *different judgments on the same issues, and between the same parties in different jurisdictions throughout the State.* Such a possible result should not be countenanced." 353 Mich. at 680, 91 N.W.2d at 892.

In Halvorsen v. Grain Dealers Mutual Insurance Company, supra, one Phyllis Jones brought an action and won judgment against a Reva Halvorsen for injuries suffered in an automobile accident. Thereafter Reva Halvorsen sued Edward Jones, father of Phyllis and owner of the vehicle which the latter was driving. Jones was allowed to plead *defensively* the former adjudication which exonerated his daughter of negligence. We find

---

3. Now Judge Edwards of our Court.

immediate distinction from the case at bar in that there the plea of estoppel was made defensively by one whose liability was derivative from that of his daughter. The District Judge considered that these facts brought the case before him into "[the] apparent exception to the rule of mutuality 'where the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit, upon the same facts, when sued by the same plaintiff.'" 210 F.Supp., at 74. Applying Michigan law, it was his view that "the Michigan Supreme Court ruled on this question" in Jones v. Chambers; he did not mention Clark v. Naufel. He noted our decision in Davis v. McKinnon & Mooney, 266 F.2d 870 (1959), wherein we held that agents-employees of an indemnity company which had been exonerated in a prior suit could maintain the defense of collateral estoppel in a subsequent action by the same plaintiff on the same issues previously litigated.

In each of the above three cases collateral estoppel was pleaded defensively; each involved an exception to the general rule requiring mutuality. In the only other relevant Michigan case discovered by our own research, the 1954 case of DePolo v. Greig, 338 Mich. 703, 709–713, 62 N.W.2d 441, the Michigan Supreme Court there acknowledged its awareness of the "liberal trend" of decisions and commentaries regarding the requirement of mutuality, but based its decision on a narrow exception to the general rule. It allowed the president and principal stockholder of a corporation to plead collateral estoppel *defensively,* based on a prior action brought by the same plaintiff wherein the corporation had been exonerated. The Court stated:

"Plaintiffs in their brief admit that an exception to the requirement of mutuality exists where the liability of the defendant is entirely dependent upon the culpability of one exonerated in a prior suit.

＊　＊　＊　＊　＊　＊

"But conversely the rule applies where the principal has been exonerated in a prior suit which determined that the agent had committed no actionable wrong." 338 Mich., at 711, 62 N.W.2d, at 444.

The Court distinguished Clark v. Naufel, supra, in that it "did not involve the aspect of corporation and agent liability as in the present case." Id., at 713, 62 N.W.2d, at 445.

Recognizing that the Michigan Court has permitted this narrow exception to the mutuality rule, we come, then, to the question of whether the District Court was correct in assuming that that Court would, if given the opportunity, abandon the requirement *altogether,* as would be required in the factual situation before us where the estoppel is sought to be asserted *affirmatively* against a defendant. The seriousness of such a step is suggested by the following excerpt from Professor Moore's treatise, Vol. 1B § 0.412 (1965):

"*Most state courts recognize and apply the doctrine of mutuality, subject to certain exceptions* [all of which involve the defensive pleading of the estoppel]. A few courts, however, have renounced the doctrine of mutuality, in whole or in substantial part, and permit a litigant—normally a defendant— to invoke the conclusive effect of a judgment in a suit to which he was neither party nor privy." Id., at 1803–05.

＊　＊　＊　＊　＊　＊

"But if the requirement of mutuality is abrogated, and an adverse judgment is thereby made available to the whole world collaterally to conclude the losing party on every adjudicated issue, no sensible and financially responsible litigant will, in certain situations, be willing to submit to an adverse judgment without exhausting every possible means to avert it. If such a judgment is thus made into something like an adverse in rem adjudication, with an invitation to the world to make the most of it, suits that might otherwise

have been defaulted, compromised or let slide will be litigated to the fullest, contrary to the public interest in minimizing litigation." Id., at 1811.

In this connection it is proper to consider Bernhard v. Bank of America National Trust & Savings Association, 19 Cal.2d 807, 122 P.2d 892 (1942) (per Traynor, J.), a case acknowledged by some courts and commentators to be the leading case abandoning the requirement of mutuality. It is referred to by the District Judge. The *Bernhard* case itself involved the *defensive* assertion of a plea of collateral estoppel. There an executor's final account had been allowed over the objection of the estate's beneficiaries that the executor had failed to account for monies of the deceased which the executor had withdrawn from a bank account of the deceased. The order allowing the account included an adjudication that the involved monies had been given to the executor by the deceased. After the account had been allowed, Helen Bernhard, who had been one of the objecting beneficiaries to the allowance of the executor's account, was appointed a successor fiduciary-administratrix, with the will annexed. In such capacity, she brought suit against the bank from which the involved money had been withdrawn by the former executor, and which had been adjudged to have been withdrawn as a gift to him. The bank offered a plea "that the money on deposit was paid out to Charles O. Cook (the former executor) with the consent of Mrs. Sather (the deceased) and the fact is res judicata by virtue of the finding of the Probate Court in the proceeding to settle Cook's account that Mrs. Sather made a gift of the money to Charles O. Cook and 'owned no sums of money' at the time of her death."

The California Court held that as Bernhard, administratrix C.T.A., represented "the very same persons and interests that were represented [as objecting beneficiaries] in the earlier hearing on the executor's account," and "the issue as to the ownership of the money is identical with the issue raised in the probate proceeding," Bernhard would be collaterally estopped from relitigating the issue in her suit against the Bank of America. It was in this factual context that the Court broadly stated the following much-quoted language:

"No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. \* \* \* Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted. [citing cases].

\*     \*     \*     \*     \*     \*

"In determining the validity of a *plea of res judicata* three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" 19 Cal.2d at 812–813, 122 P.2d at 895.

This broad language makes no distinction between the defensive and offensive use of collateral estoppel. And in another opinion written by Judge Traynor in 1962, Teitelbaum Furs, Inc. v. Dominion Insur. Co., Ltd., 58 Cal.2d 601, 25 Cal.Rptr. 559, 375 P.2d 439, *Bernhard* is characterized as the California Court's "abandonment" of the requirement of mutuality of estoppel. 25 Cal.Rptr. 559, 375 P.2d at 440. Again, however, as in *Bernhard*, the factual situation there involved the *defensive* use of collateral estoppel against a plaintiff who had already litigated the identical issues in a previous suit and lost. Throughout *Bernhard*, Judge Traynor refers always to a *defensive plea* and supports his rule by the observation that "The doctrine also serves to protect persons from being twice vexed for the same cause." This is not our case.

From our own research we find no case in which the California Supreme Court has reviewed a plaintiff's affirmative assertion of collateral estoppel in a non-mutuality situation. (Several lower courts in California have, however, approved such affirmative use in quite special fact situations. See Hardware Mut. Ins. Co. of Minnesota v. Valentine, 119 Cal.2d 125, 259 P.2d 70, 74 (1953); Perkins v. Benguet Consol. Mining Co., 55 Cal.App.2d 720, 132 P.2d 70, 83 (1942).) The application of *Bernhard* to cases presenting factual contexts similar to the present case has been explicitly rejected in two other California cases with extensive and, we think, appropriate discussion regarding the *affirmative* use of collateral estoppel. See McDougall v. Palo Alto Unified School District, 212 Cal.App.2d 422, 28 Cal.Rptr. 37 (1963); Nevarov v. Caldwell, 161 Cal. App.2d 762, 327 P.2d 111 (1958). See also Quinn v. Litten, 148 Cal.App.2d 631, 307 P.2d 90, 92 (1957); Price v. Atchison, T. & S. F. Ry. Co., 164 Cal. App.2d 400, 330 P.2d 933 (1958).

In Nevarov v. Caldwell, supra, a multiple automobile collision resulted in a "group of claims and counterclaims" out of which emerged the action of John W. Nevarov and his wife against Caldwell. The Court stated the facts as follows:

"The appeal is from the judgment rendered in a second trial of the issues raised between these parties.

"At the first trial James Nevarov, a minor, was a co-plaintiff with his parents, John and Anna. No claim of contributory negligence was made against him and judgment went in his favor but against his parents. James' judgment became final and was satisfied. A new trial was granted the parents with no limitation upon the issues to be tried.

"At the second trial, and here, the parents claim that the judgment in favor of James establishes conclusively in their favor the issue of negligence on the part of defendant Caldwell. They rely upon Bernhard v. Bank of America, * * * to support the argument that the judgment against Caldwell in James' case is admissible and conclusive against Caldwell upon the issue of his negligence because he was a party to James' action and mutuality is no longer of the essence of res judicata in this state." 327 P.2d at 113–114.

In refusing to apply the *Bernhard* "doctrine" affirmatively, the Court reasoned as follows:

"Bernhard v. Bank of America, supra, 19 Cal.2d 807, 122 P.2d 892, broadly and definitely holds that mutuality of estoppel is not essential to application of res judicata either as a bar or in its other aspect of collateral estoppel.

\* \* \* \* \* \*

"And whether it would be fair to apply the Bernhard doctrine in the parents' case becomes a serious question. The judgment in favor of James was for $691.65; it was satisfied about 11 months after the parents had been granted a new trial upon their cause of action. If Bernhard is applicable to such a situation it would have been necessary for defendant to appeal from a judgment for an insignificant amount (compared to the claims of the parents) in order to keep the issue of his own negligence open for the second trial, to take an appeal which well might have been frivolous. Such a rule would be promotive of litigation, 'would tend to defeat rather than to promote the preventing vexatious litigation with its objective of attendant expense both to the parties and the public.' (quoting Taylor v. Hawkinson, 47 Cal.2d 893, 897, 306 P.2d 797, 799). But this case should not be decided upon that narrow ground.

"This action is part of a larger pattern which has developed in personal injury cases in Los Angeles County and probably elsewhere in the state. The attorney who has a difficult case or group of cases on his hands files in the municipal court an action for recovery from a single defendant for property damage or minor personal

injuries in the expectation that liability will be easily and speedily established and the question of damages left as the only issue to be decided in the principal action or actions brought in the superior court because res judicata establishes defendant's liability. This strategy (quite legitimate if Bernhard, supra, has universal application) is applied to multiple injuries to different people arising from the same accident. This occurs repeatedly in situations developed by accidents such as the collision of two aeroplanes over the Grand Canyon; the injury to many passengers on the San Diego-Los Angeles line of a railroad where the train was wrecked and the engineer claimed a momentary blackout; the breaking of the St. Francis Dam many years ago, followed by a great number of claims against the City of Los Angeles; the collision between the Andrea Doria and the Stockholm off the New England coast in recent years. As several commentators have pointed out, Bernhard, supra, if held applicable to such situations, means that a defendant who obtains a favorable judgment, or 10 of them, cannot use those judgments against other claimants because the want of mutuality would spell absence of due process if the judgments were pleadable in bar or estoppel. But the plaintiff in the eleventh case is fortunate enough to establish liability and the defendant is confronted by a conclusive adjudication of its own negligence in the next 10 or 20 cases,—this being due to the fact that mutuality is not necessary and it has had its day in court, in fact 11 of them (none of which resulted adversely except the eleventh). This looks like the scales of justice are weighted in favor of the plaintiff. That our Supreme Court meant no such lopsided justice seems reasonably plain from an examination of its rulings later than Bernhard, supra.

\* \* \* \* \* \*

" ' "The public policy underlying the principle of res judicata that there must be an end to litigation requires that the issues involved in a case be set at rest by a final judgment. \* \* This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case." Jorgensen v. Jorgensen, 32 Cal.2d 13, 18, 193 P.2d 728, 731.' In re Estate of Charters, 46 Cal.2d 227, 235, 293 P.2d 778, 783. To the same effect, see, In re Estate and Guardianship of Di Carlo, 3 Cal.2d 225, 235, 44 P.2d 562, 90 A.L.R. 990; Natural Soda Products Co. v. City of Los Angeles, 109 Cal.App.2d 440, 446, 240 P.2d 993; In re Estate of Spinosa, 117 Cal.App.2d 364, 369–370, 255 P.2d 843.

"An examination of later rulings of the Supreme Court indicates that it does not entertain the view that the Bernhard doctrine is to be universally applied regardless of consequences.

\* \* \* \* \* \*

"It becomes necessary in this case to declare the public policy of this state upon the application of the rule of res judicata to multiple claims of different persons for personal injuries or property damage against a single defendant or set of defendants growing out of a single accident. We hold that res judicata does not apply to those situations; that such an extension of the doctrine would be promotive of litigation and in subversion of sound principles of judicial administration looking to equal justice for all. There was no error in refusing the instruction which appellants sought upon this subject." 327 P.2d at 114–119.

In the McDougall case, supra, the Nevarov case was followed in its treatment of Bernhard and the affirmative use of collateral estoppel was disapproved of where mutuality was lacking. The Court stated:

"It would seem at first blush that the instant case falls within the Bernhard rule \* \* \*. However, contrary to appellants' claim, the rule announced in

Bernhard has not had such broad and indiscriminate application. [Citation to *Nevarov* and Price v. Atchison, T. & S. F. Ry. Co., supra.]

\* \* \* \* \* \*

"Nor have appellants cited us to any case where the doctrine has been applied 'offensively.'

\* \* \* \* \* \*

"We have not been referred to, nor have we found, any case upholding the plea of res judicata in the precise instant situation. For the reasons we have given above, we are persuaded that such plea cannot be availed of 'offensively' in the case before us. \* \* \*." 28 Cal.Rptr., at 41–42.

We add our own observations as to the bizarre consequences that could flow from allowing collateral estoppel to be used as the plaintiff here seeks to do. Stated simply—the owner of a vehicle involved in an automobile collision sues and recovers from the other driver the damages done his vehicle. Forthwith the estate of a person (not an owner of the vehicle in which he was riding) who was fatally injured in the collision, has thereby won its lawsuit for the wrongful death of its decedent, except for the totalling up by a jury of the surviving widow's damage. This will be so even if the plaintiff in the first suit suffered only small damages and sues for $50.00 in the Justice Court. The defendant hired his young nephew who had just passed the bar to defend the case, aware of the small amount involved and then losing the case, paid the $50.00 judgment because it would be completely uneconomic to appeal to the Circuit Court for a trial de novo. By this conduct he has confessed liability in the $100,000 lawsuit later brought by an injured non-owner passenger in the vehicle with the $50.00 damage. To go further, a defendant sued for the cost of a crumpled fender cannot afford to make an extensive preparation to defend against such a small claim, so he relies upon his own account of the accident to resist an opposing account given by the driver of the other car. He loses and pays off. Then comes the big lawsuit for personal injuries by the occupant, nonowner of the car with the crumpled fender. Such exposure warrants extensive investigation. This turns up several eyewitnesses and other evidence truthfully corroborating the defendant's own account of freedom from negligence. Too late—the crumpled fender case lost him his defense to the big case.

We conclude that the Supreme Court of Michigan would not abandon the requirement of mutuality in the present factual situation, thus placing itself among the few jurisdictions which have done so. We add that we do not consider that it should be a matter of discretion for a trial court to allow, or not to allow, employment of the rule contended for by the appellee, depending upon such circumstances as we have discussed. We should guard against allowing procedural novelties, conceived as short-cut ways of handling litigation, to lead to unjust results. Our view of the proper rule to apply here should not be affected by an assumption that the counsel that defended the Common Pleas action were the same as those who defend here, no doubt hired by an insurance company which is paying the bill.

Reversed, with direction to vacate the partial summary judgment entered for plaintiff.