FOUNDATION ON ECONOMIC
TRENDS, et al., Plaintiffs,

v.

James D. WATKINS, et al., Defendants.

Civ. A. No. 89–1483.

United States District Court,
District of Columbia.

Feb. 12, 1990.

Edward Lee Rogers, Washington, D.C., for plaintiffs.

Gary B. Randall and Daria J. Zane, Dept. of Justice, Land and Natural Resources Div., Gen. Litigation Section, for defendants.

## ORDER

REVERCOMB, District Judge.

The Plaintiffs filed their complaint on May 23, 1989, against the Secretary of Energy, the Secretary of the Interior and the Secretary of Agriculture, seeking this Court "to declare unlawful and enjoin certain actions of the defendants ... in authorizing, carrying out, approving, funding, or participating in programs that contribute to the 'greenhouse effect' without discussing and evaluating the impacts of those contributions in environmental documentation, review, and decision-making in conformity with the requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370a (1982)." This matter is before the Court pursuant to the Defen-

dants' Motion to Dismiss. The Defendants support their motion to dismiss on grounds that the Plaintiffs seek an advisory opinion, their claims are not ripe for review, and the Plaintiffs lack standing.

## I. ADVISORY OPINION

The Defendants contend that the Plaintiffs' complaint does not challenge the adequacy or seek the review of any particular NEPA document but instead asks this Court to rule that as a matter of law federal agencies must consider the greenhouse effect in all NEPA documents. The Defendants argue that such a ruling would constitute an impermissible advisory opinion under the case or controversy requirement of Article III of the United States Constitution. *See National Conference of Catholic Bishops v. Smith,* 653 F.2d 535, 539 (D.C.Cir.1981) (federal courts are "without power ... to decide abstract, hypothetical or contingent questions"); *see also Princeton Univ. v. Schmid,* 455 U.S. 100, 102, 102 S.Ct. 867, 868, 70 L.Ed.2d 855 (1982); *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952); *Center for Science in the Public Interest v. Regan,* 727 F.2d 1161, 1166 n. 6 (D.C.Cir.1984).

█ Although this Court may not be able to provide all the relief that the Plaintiffs request,[1] a fair reading of the Complaint amply demonstrates that the Plaintiffs are challenging specific programs and projects upon which this Court can act; namely, whether particular NEPA documents on particular actions requires discussion of the possibility of global climate change. Not only does the Complaint provide that, *inter alia,* the Plaintiffs are seeking relief for "certain actions"[2] but the Plaintiffs specifically cite those actions which they are challenging. For example, the Plaintiffs are challenging the sufficiency of NEPA documents prepared by the DOE for

the conversion of energy producing plants previously using other fuels, such as natural gas, into coal-fired generating plants. The Department of Energy has prepared environmental impact statements on several conversions, including the Mt. Tom generating station and the Brandon Shores generating station. Neither of those environmental impact statements nor any others concerning such conversions discuss the environmental impacts of the conversion in terms of their contribution to the greenhouse effect through increased emissions of $CO_2$.

Another specific action which the Plaintiffs challenge is the Federal Coal Management Program which is overseen by the Department of Interior's Bureau of Land Management. The complaint provides:

Approximately one-third of the nation's coal supply is owned, managed and operated under the BLM's Federal Coal Management Program. This includes about 60% of all Western coal reserves and accounts, through federal leases, for about 18.5% of the country's coal production. In 1986 alone, the sale of six federal coal leasing tracts covering 5,628 acres encompassed approximated 33.9 million tons of recoverable coal reserves. Thus, the BLM's Coal Management Program Activities contribute substantially to the greenhouse effect in that burning coal contributes significantly to the concentration of $CO_2$ in the atmosphere. Environmental impact statements prepared on the program, the leases and the sale

---

1. "Relief in the alternative or of several different types may be demanded." FED.R.CIV.P. 8(a).

2. Even where the Plaintiffs seek relief for future and unspecified conduct by the Defendants, they make clear that this relief is in addition to the relief they seek on specific action that the Defendants have already taken:

Plaintiffs request that the court declare the defendants' actions, and failures to act illegal under the National Environmental Policy Act

("NEPA"), 42 U.S.C. §§ 4321–4370 (1982), its implementing regulations, including those of the defendants, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706 (1982). Plaintiffs *also* seek an order by this court enjoining any actions that are to be taken under proposals now under consideration by the defendants which would contribute to the greenhouse effect where those proposals are not being developed in accordance with the requirements of NEPA.

of lease tracts, however, have not discussed the impact of these activities on the greenhouse effect.

In all, the Plaintiffs name 26 programs and actions which they claim do not contain adequate environmental documentation. The Plaintiffs are not required to challenge one federal program or action at a time. *See* FED.R.CIV.P. 18(a). In light of the specific actions which the Plaintiffs challenge, this Court rules that the complaint cannot be dismissed for seeking an impermissible advisory opinion.

## II. RIPENESS

■ The Defendants argue that the Plaintiffs' claims are also not ripe for review because they do not challenge any specific final actions of Defendants but instead seek a ruling from the Court on abstract, remote, and conjectural "actions to be taken" that may never require resolution. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *NRDC v. EPA,* 859 F.2d 156, 165 (D.C.Cir.1988). Again, the Defendants' argument is misplaced. Although some of the relief which the Plaintiffs seek may not be appropriate, the Plaintiffs' should not be penalized for reaching too far when they in fact do cite final and specific actions of the Defendants upon which they may be entitled to relief upon the merits.

## III. STANDING

The Defendants contend that the Plaintiffs do not have standing. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

■ The Plaintiffs contend that the injury they have suffered is deprivation of information resulting from Defendants' alleged failures to comply with NEPA which has impeded the Plaintiffs' informational, educational, and activist functions. The Defendants contend that lack of information is not a distinct and palpable injury.

However, the concept of informational standing is well-recognized in this circuit. *See Scientists' Institute for Public Information, Inc. v. Atomic Energy Comm'n,* 481 F.2d 1079, 1087 n. 29 (D.C.Cir.1973) (plaintiff had standing because its activities were adversely affected by its inability to obtain information that defendant had a duty to provide in an EIS); *Foundation on Economic Trends v. Lyng,* 680 F.Supp. 10, 14 (D.D.C 1988) (plaintiff had standing based on its ability to provide information to the public). The purpose of preparing environmental documentation under NEPA is to provide information. *See Weinberger v. Catholic Action of Hawaii/Peace Educ. Project,* 454 U.S. 139, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981).

The Defendants also contend that the Plaintiffs lack standing because they have failed to challenge any particular federal action and accordingly the Plaintiffs cannot cite to the specific information of which they have allegedly been deprived. The Defendants rely upon *Wilderness Society v. Griles,* 824 F.2d 4 (D.C.Cir.1987) where the Court described the requirements of particularized injury:

> *Sierra Club [v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)] and [*U.S. v.*] *SCRAP* [412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)] teach us that when an alleged injury involves the use and enjoyment of land, it is not enough that plaintiffs have a generalized interest in preserving such use and enjoyment. Rather, plaintiffs must allege that they or their members will suffer particularized injury from being denied the use and enjoyment of the land.

*Id.* 824 F.2d at 15. In *Griles,* the court held that the plaintiffs did not show a sufficient likelihood of personal injury because they could not show which lands were to be affected by the challenged government action. *Id.*

The Defendants' reliance on *Griles* is misplaced. First, the Plaintiffs have specifically identified federal actions which they allege fail to comply with NEPA. Moreover, they have specifically identified the environmental zone, the global atmo-

sphere, which is affected by the government's actions.

Accordingly, it hereby is

ORDERED that Defendants' Motion to Dismiss be, and the same hereby is, DENIED; and it is further

ORDERED that Defendants file an answer to Plaintiffs' complaint within eleven days; and it is further

ORDERED that the motions hearing scheduled in this matter for February 23, 1990 at 9:30 is vacated; and it is further

ORDERED that a status hearing is scheduled in this matter for March 2, 1990 at 10:00 a.m.