**FOUNDATION ON ECONOMIC TRENDS, et al., Plaintiffs,**

v.

**James D. WATKINS, et al., Defendants.**

Civ. A. No. 89–1483 (GHR).

United States District Court,
District of Columbia.

April 29, 1992.

Gary B. Randall, Daria J. Zane, Ellen M. Athas, Dept. of Justice, Environment and Natural Resources Div., General Litigation Section, Washington, D.C., for defendants.

Edward Lee Rogers, Washington, D.C., for plaintiffs.

## MEMORANDUM & OPINION

REVERCOMB, District Judge.

This action is brought under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4347, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–706, against the Secretary of Energy, the Secretary of Agriculture, and the Secretary of the Interior. According to their First Amended Complaint for Declaratory and Injunctive Relief, filed May 20, 1991,[1] plaintiffs seek this Court "to declare unlawful certain actions of the defendants ... in authorizing, carrying out, approving, funding, or participating in programs and actions that contribute to or ameliorate the 'greenhouse effect' without discussing and evaluating the impacts of those contributions in environmental documentation, review, and decision-making in conformity with the requirements of" NEPA. Specifically, plaintiffs have identified some 42 "actions and programs under the authority of the defendants that may contribute significantly to, or ameliorate, the greenhouse effect," for which defendants "have failed to consider (or have considered inadequately) under NEPA the impacts their activities and programs may have on the greenhouse effect, despite significant new information that continues to emerge on this subject."[2]

In an earlier ruling denying defendants' Motion to Dismiss, this Court held that plaintiffs did not seek an advisory opinion, that the challenged actions were ripe for review, and that plaintiffs had standing under the concept of informational standing then recognized in this circuit. *See Foundation on Economic Trends (FOET) v. Watkins,* 731 F.Supp. 530 (D.D.C.1990). Now before the Court is defendants' Motion for Summary Judgment, in which they renew their standing challenge, assert plaintiffs' failure to exhaust administrative remedies, and raise various other objections going to the merits of plaintiffs' claims with regard to specific agency actions. The parties have fully addressed these arguments in their briefs, as well as in oral argument at a hearing held December 10, 1991.

Also before the Court are plaintiffs' Motion for Leave to File Second Amended Complaint, filed February 11, 1992, and defendants' Opposition thereto, containing a Motion for Partial Summary Judgment directed at the additional claims contained in the Second Amended Complaint. Both of these are now ripe.

The Court has carefully weighed the arguments presented by the parties in their briefs and in oral argument, particularly on the question of plaintiffs' standing. Because the Court is now persuaded that plaintiffs lack standing, the Court will issue an Order granting defendants' Motion for Summary Judgment on that basis. Plaintiffs' Motion for Leave to File Second Amended Complaint will be denied, thus rendering defendants' Motion for Partial Summary Judgment moot.

## I. *Plaintiffs' Lack of Standing*

As our court of appeals has made clear, litigants must meet *both* the constitutional requirements for standing *and* the requirements imposed by Congress in the APA in order to obtain judicial review of agency action under NEPA. *See Foundation on Economic Trends v. Lyng,* 943

---

1. Plaintiffs originally commenced their lawsuit on May 23, 1989.

2. The First Amended Complaint identifies 46 such actions and programs. *See* First Am. Complt. ¶¶ 36–44. Plaintiffs subsequently withdrew their claims with respect to four of the challenged actions: 1) the Bonneville Power Administration Final Environmental Impact State on Intertie Development and Use; 2) the Department of Energy's Environmental Assessment on the Interim Energy Conservation Standards for New Residential Buildings; 3) the Department of Energy's Liquid Metal Fast Breeder Program; and 4) the DOE's Light Water Breeder Reactor Program. *See* Pls.' Opp'n to Defs.' Mot. for Summ. J. at 74–75.

F.2d 79, 82–83 (D.C.Cir.1991) ("the *Germplasm* case"); *City of Los Angeles v. National Highway Traffic Safety Administration,* 912 F.2d 478, 483 (D.C.Cir.1990). Under constitutional standing doctrine, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982)). When, as here, there is a challenge to federal agency compliance with NEPA, plaintiffs' claim of a right to judicial review is also governed by section 10(a) of the APA, which provides that

> [a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702. The Supreme Court has interpreted this provision to require that the person claiming a right to sue 1) "identify some 'agency action' that affects him in the specified fashion"; and 2) "establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 3185, 3186, 111 L.Ed.2d 695 (1990). "If a petitioner can establish that it has suffered an injury within the zone of interests, it will necessarily have satisfied the constitutional injury requirement as well." *City of Los Angeles,* 912 F.2d at 483.[3]

The doctrine of standing has been well described as a " 'complicated specialty of federal jurisdiction, the solution of whose problems is ... more or less determined by the specific circumstances of individual situations.' " *Germplasm,* 943 F.2d at 82 (quoting *United States ex rel. Chapman v. FPC,* 345 U.S. 153, 156, 73 S.Ct. 609, 612, 97 L.Ed. 918 (1953) (Frankfurter, J.)). Moreover, the Supreme Court has noted that "the concept of 'Art. III standing' has not been defined with complete consistency in all of the various cases decided by this Court which have discussed it." *Valley Forge,* 454 U.S. at 475, 102 S.Ct. at 760. Nevertheless, the Supreme Court has repeatedly stressed that a showing of *palpable* and *particularized* injury on the part of the plaintiff is a *sine qua non* of standing in federal court. *See, e.g., Allen v. Wright,* 468 U.S. at 751, 104 S.Ct. at 3324–25 (citing cases); *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758–59 (same); *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) ("[T]he plaintiff ... must allege a distinct and palpable injury to himself"); *Sierra Club v. Morton,* 405 U.S. 727, 740, 92 S.Ct. 1361, 1368–69, 31 L.Ed.2d 636 (1972) (Under the APA, the showing of adverse effect on the part of the plaintiff serves "as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome.") The purpose of this requirement is to ensure that the judicial power exercised by federal judges remains confined to the adjudication of particular "cases" and "controversies," as set forth in Article III, and not extended to the resolution of disputes by litigants with no more than an ideological interest in a problem, no matter how deeply that interest may be held. *See Allen v. Wright,* 468 U.S. at 754–56, 104 S.Ct. at 3326–27; *United States v. Richardson,* 418 U.S. 166, 176–80, 94 S.Ct. 2940, 2946–48, 41 L.Ed.2d 678 (1974); *Sierra Club v. Morton,* 405 U.S. at 739, 92 S.Ct. at 1368; *see also* Scalia, "The Doctrine of Standing as an Essential Element of the Separation of Powers," 17 *Suffolk L.Rev.* 881 (1983).

---

**3.** The Court has no doubt that whatever "adverse effect" or "aggrievement" plaintiffs claim to have suffered is "within the meaning of the relevant statute"—*i.e.,* is within the zone of interests of NEPA. *See Lujan v. National Wildlife Fed'n,* 110 S.Ct. at 3187; *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349, 109 S.Ct. 1835, 1845, 104 L.Ed.2d 351 (1989) (discussing the informational interests guaranteed under NEPA). It is plaintiffs' claim of injury, rather than the zone of interests, that is disputed here.

■ It is within this context that this Court must evaluate plaintiffs' claim of standing. That claim rests upon the assertion that injury to plaintiffs' information dissemination activities, caused by defendants' alleged failure to address or to address adequately under NEPA the effects of various federal actions on global warming, is distinct and palpable injury for standing purposes. In so invoking the concept of "informational standing" under NEPA, plaintiffs rely on a line of cases within this circuit going back to a footnote in a 1973 opinion authored by the late Judge Skelly Wright. *See Scientists' Institute for Public Information, Inc. (SIPI) v. Atomic Energy Comm'n*, 481 F.2d 1079, 1086–87 n. 29 (D.C.Cir.1973); *see also Competitive Enterprise Inst. v. National Highway Traffic Safety Admin.*, 901 F.2d 107, 123 (D.C.Cir.1990) (citing and discussing the *dicta* in *SIPI*); *National Wildlife Fed'n v. Hodel*, 839 F.2d 694, 712 (D.C.Cir. 1988) (same). These cases suggest that, where an organization asserts "a plausible link between the agency's action, the informational injury, and the organization's activities," and where the organization can "point to concrete ways in which their programmatic activities have been harmed" by an infringement on the "right to information on the environmental effects of government actions" created by NEPA, the organization's right to judicial review may be sustained on informational standing grounds. *Competitive Enterprise Inst.*, 901 F.2d at 122–23. In the case at bar, plaintiffs—the Foundation on Economic Trends, the Greenhouse Crisis Foundation, and author Jeremy Rifkin—assert that their right to judicial review of defendants' alleged failure to comply with NEPA rests on just such allegations of injury: That defendants' failure to consider the effects on global warming of specific federal actions and programs under their authority has harmed plaintiffs' programmatic activities in disseminating information about the greenhouse effect to the public.

Our court of appeals has recently reexamined the informational standing concept and found it wanting. *See Germplasm*, 943 F.2d at 82–85. In the *Germplasm* case, decided during the course of briefing on defendants' Motion for Summary Judgment before the Court today, the Foundation on Economic Trends and other individual and organizational plaintiffs sought to challenge the Department of Agriculture's ("USDA") failure to prepare an environmental impact statement ("EIS") with respect to what was described as the department's "germplasm preservation program." *Id.* at 80. The *Germplasm* plaintiffs rested their standing to sue on the basis of informational standing. *Id.* at 83. Although the court of appeals ultimately found that the plaintiffs lacked standing because they failed to challenge an "agency action" triggering the department's obligations under NEPA, the court also found that the *claim* of informational injury itself ran afoul of the Supreme Court's insistence that " 'a mere interest in a problem,' " was insufficient to confer standing. *Id.* at 85 (quoting *Sierra Club v. Morton*, 405 U.S. at 739, 92 S.Ct. at 1368). As the court explained,

"informational injury," in its broadest sense, exists day in and day out, whenever federal agencies are not creating information a member of the public would like to have. If such injury alone were sufficient, a prospective plaintiff could bestow standing upon itself in every case merely by requesting the agency to prepare the detailed statement NEPA contemplates, which in turn would prompt the agency to engage in "agency action" by failing to honor the request.

*Id.* Thus, standing based on informational injury alone "would potentially eliminate any standing requirement in NEPA cases, save when an organization was foolish enough to allege that it wanted the information for reasons having nothing to do with the environment." *Id.* at 84.

This reasoning is sound, and conforms to the general direction of the Supreme Court's standing jurisprudence since at least the mid-1970s. *See Allen v. Wright*, 468 U.S. at 750–61, 104 S.Ct. at 3324–30 (explicating standing doctrine in light of separation of powers concerns); Scalia, *supra*, at 897–99 (noting a return to the origi-

nal understanding of standing with cases such as *U.S. v. Richardson* ). Notwithstanding its earlier ruling on plaintiffs' claim of informational standing, *see FOET v. Watkins*, 731 F.Supp. at 532, rendered before the court of appeals decided *Germplasm* and thus without the benefit of the majority's analysis of case law on the concept, this Court finds plaintiffs' claim of informational injury to be virtually indistinguishable from an ideological interest in the problem of global warming that, without more, is insufficient to confer standing.

Plaintiffs argue that the *Germplasm* majority's criticism of informational standing is merely *dicta*, and that informational standing, as generally described in the *Competitive Enterprise Institute* opinion, remains the law of this circuit. *See* 901 F.2d at 122–24. This Court believes that the most recent expression on the subject from the court of appeals is not so easily ignored, and that the effect of that expression is to indicate that the court of appeals no longer regards informational standing alone under NEPA as a sound concept. *See Germplasm*, 943 F.2d at 84 ("Despite the general statements in our decisions, . . . we have never sustained an organization's standing in a NEPA case solely on the basis of 'informational injury.' ") Eliminating informational injury as a basis for standing in NEPA cases will not render unreviewable agency fidelity to NEPA's commands. Rather, "[i]n the NEPA context, 'the creation of a risk that serious environmental impacts will be overlooked' is sufficient to establish the injury necessary for standing, 'provided this injury is alleged by a plaintiff that . . . may be expected to suffer whatever environmental consequences the [decision] may have.' " *City of Los Angeles*, 912 F.2d at 483 (quoting *City of Davis v. Coleman*, 521 F.2d 661, 671 (9th Cir.1975)). Informational injury simply does not qualify as an "environmental consequence[ ]" of an agency's failure to comply with NEPA, and thus is not a distinct and palpable injury for standing purposes under that statute.

Accordingly, because plaintiffs' First Amended Complaint and their Opposition to plaintiffs' Motion for Summary Judgment claim standing solely on the basis of informational injury, this Court finds that plaintiffs lack standing under the most recent analyses of standing doctrine by the Supreme Court and our court of appeals.

## II. *Plaintiffs' Motion to Amend their Complaint*

Approximately two months after the hearing on defendants' Motion for Summary Judgment, plaintiffs filed with the Court a Motion for Leave to File Second Amended Complaint ("Motion to Amend"). Plaintiffs seek to amend their complaint in three respects. First, they seek to add an additional basis for plaintiff Jeremy Rifkin's standing, which they raised at oral argument on December 10, 1992, and in a post-hearing memorandum. Second, they seek to conform their complaint to statements made in their Opposition brief, that they were withdrawing their challenge to four of the Department of Energy's (DOE) NEPA documents. Third, they seek to revise the complaint to clarify their challenge to defendants' compliance with NEPA with regard to the DOE's alleged failure to supplement a 1979 Final EIS for the Naval Petroleum Reserve No. 1, and with regard to the USDA's 1982 National Conservation Program. Defendants' have opposed the Motion to Amend, and separately moved for partial summary judgment on these issues in the event the Court should permit the amendment. Both parties have filed responsive briefs addressing the propriety of allowing the filing of a Second Amended Complaint, and the merits of the additional claims contained therein.

■ Under Fed.R.Civ.P. 15(a), a party seeking to amend a pleading after the time prescribed for amendment as a matter of course may do so only by leave of the court or by written consent of the adverse party. The Rule provides, however, that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Interpreting this passage, the Supreme Court has declared that futility of amendment is one reason for a district court to withhold leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222

(1962); *see also Key Airlines, Inc. v. National Mediation Bd.*, 745 F.Supp. 749, 751 (D.D.C.1990) (Court has discretion to refuse leave to amend where the added claim is wholly without merit); *Halpert v. Wertheim & Co., Inc.*, 81 F.R.D. 734, 735 (S.D.N.Y.1979) (Court may deny leave to amend if the complaint, as amended, would not survive a motion to dismiss). Defendants urge the Court to deny plaintiffs' Motion to Amend primarily because the amended standing and NEPA claims would be futile. The Court is inclined to agree.

The Second Amended Complaint adds a standing claim on the part of plaintiff Jeremy Rifkin that rests on the following allegation of direct environmental injury from defendants' alleged failure to comply with NEPA:

> ... During the past several years, plaintiff Rifkin has vacationed each summer for approximately one month to six weeks on the eastern seashore in locations near Rockport and Gloucester, Massachusetts. Rifkin customarily arranges to rent a cottage for that purpose. He thus has spent many days enjoying the beach and the water over the past several summers. Rifkin and his wife expect to rent a cottage in Emerald Beach, North Carolina this June, and they expect to customarily spend a month there each summer in future years.

> ... Plaintiff Rifkin's use and enjoyment of the environments described above is directly threatened by the effects of global warming. One of the most certain effects of global warming is a rise in sea level, although the rate of potential increase has not yet been established. Inasmuch as the beaches used by Rifkin are very flat and shallow areas, even a very modest rise in sea level could have devastating effects on them.

Pls.' Second Amended Complt. ¶¶ 20(a), 20(b). Mr. Rifkin further contends that defendants' failure to take adequate consideration of global warming into account in the challenged NEPA documents "create risks that decisionmakers will overlook the impact of those programs and actions on global warming." *Id.* ¶ 20(c). As a consequence, the challenged decisions "increase the likelihood that Rifkin's use and enjoyment of the eastern seashore beaches described above will be curtailed or eliminated by the effects of global warming." *Id.*

■ There is no question that injury to an individual's recreational use or aesthetic enjoyment of the environment is cognizable for standing under NEPA. *See Lujan v. National Wildlife Fed'n*, 110 S.Ct. at 3187; *Sierra Club v. Morton*, 405 U.S. at 738, 92 S.Ct. at 1367-68. Nor does this Court doubt the potentially serious consequences of global warming, or that such consequences may fall within the scope of agency consideration pursuant to NEPA. *See City of Los Angeles*, 912 F.2d at 492. Rather, the question is whether *Mr. Rifkin* has shown himself to have "a direct stake in the outcome" of the 42 federal actions and programs he seeks to challenge, to invoke the power of *this Court* to review those actions pursuant to the NEPA statute. *Sierra Club v. Morton*, 405 U.S. at 740, 92 S.Ct. at 1368-69.

■ The Court finds that the allegations of injury set forth above fall short of that showing for two reasons. First, Mr. Rifkin's allegations of environmental harm to the beaches he expects to use lack " 'a sufficient geographical nexus *to the site of the challenged project* that he may be expected to suffer whatever environmental consequences *the project* may have.' " *City of Los Angeles*, 912 F.2d at 492 (quoting *City of Davis v. Coleman*, 521 F.2d at 671) (emphasis added). Moreover, his claim of environmental injury rests merely upon the assertion that he "expects" to rent a cottage in Emerald Beach, North Carolina in June 1992, and that he "expects" to do so in future years. This allegation is a far cry from the situation of the NRDC member whose allegations of injury our court of appeals found sufficient to confer standing in *City of Los Angeles*. *See id.* at 494 (member-affiant regularly used lands in the vicinity of the challenged action for recreational purposes and gained his livelihood by farming directly from the affected geographic area).

Second, Mr. Rifkin has failed to show that "the alleged injury is 'fairly traceable' to the proposed action." *Id.* at 495. In fact, Mr. Rifkin has failed to relate the environmental harm he claims he may suffer to *any* of the 42 challenged agency actions. On a motion for summary judgment, it is not for the Court to presume causal connections between the harm alleged and the particular actions challenged. *See Lujan v. National Wildlife Fed'n,* 110 S.Ct. at 3189. Moreover, the Supreme Court has made it abundantly clear that a litigant may no longer obtain across-the-board, nationwide correction of agency actions under the APA simply because his use of one locality may be adversely affected. *See id.* at 3190–91; *see also Conservation Law Foundation v. Reilly,* 950 F.2d 38, 43 (1st Cir.1991) (holding that a plaintiff has no standing to challenge, under CERCLA's citizen-suit provision, each and every federal facility in a nationwide program where it has "ties only to a few federal facilities").

▮▮▮ In short, under Mr. Rifkin's allegations of environmental injury, "the standing requirement [in NEPA cases] would, as a practical matter, [be] eliminated for anyone with the wit to shout 'global warming' in a crowded courthouse." *City of Los Angeles,* 912 F.2d at 484 (D.H. Ginsburg, J., dissenting). Notwithstanding the seriousness of the phenomenon, there is no "global warming" exception to the standing requirements of Article III or the APA. Because Mr. Rifkin's claim of direct environmental injury, as set forth in plaintiffs' Second Amended Complaint, would not pass muster to establish his standing to obtain judicial review of the agency actions he seeks to challenge,[4] granting plaintiffs

leave to amend their complaint would be futile, and their Motion to Amend will accordingly be denied.[5]

### III. Conclusion

For the reasons set forth above, the Court finds that plaintiffs have failed to establish their standing to challenge defendants' alleged failure to comply with NEPA. Because the Court finds that plaintiffs lack standing, it is unnecessary to consider the other issues raised in defendants' Motion for Summary Judgment. The Court will, therefore, enter an Order granting defendants' Motion for Summary Judgment, denying plaintiffs' Motion for Leave to File Second Amended Complaint, and dismissing the case. The Court's ruling on the Motion to Amend moots defendants' Motion for Partial Summary Judgment.

### ORDER

For the reasons set forth in the Court's Memorandum & Opinion, issued today, it is

ORDERED, that defendants' Motion for Summary Judgment is GRANTED; and, it is

FURTHER ORDERED, that plaintiffs' Motion for Leave to File Second Amended Complaint is DENIED; and, it is

FURTHER ORDERED, that this case is DISMISSED for lack of standing.

---

4. Because the Court holds that plaintiffs lack standing under either the informational injury or environmental injury approach, the Court need not consider whether plaintiffs' other proposed amendments would be futile. Nevertheless, the Court notes that it finds persuasive defendants' argument that the USDA's National Conservation Program is not a proposal for federal action subject to NEPA. *See* 16 U.S.C. § 2005; 53 *Fed.Reg.* 10,135 (March 29, 1988); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Amendment on the DOE's Naval Petroleum Reserve would likewise be futile because there is

as yet no final supplemental EIS for this Court to review. *See Kleppe v. Sierra Club,* 427 U.S. 390, 406 & n. 15, 96 S.Ct. 2718, 2728–29, n. 15, 49 L.Ed.2d 576 (1976).

5. Plaintiffs also argue that their Motion to Amend should be granted as an amendment to conform to the evidence under Rule 15(b). As defendants correctly note, that Rule by its own terms applies only to issues that have been "tried." Fed.R.Civ.P. 15(b). There has been no trial in this case, and therefore Rule 15(b) does not apply.