**Ralph McADOO, Janice McAdoo, Plaintiffs–Appellants,**

**v.**

**The DALLAS CORPORATION, Defendant–Appellee.**

**No. 90–3690.**

United States Court of Appeals, Sixth Circuit.

Argued March 28, 1991.

Decided May 7, 1991.

Joseph A. Condeni (argued), Cleveland, Ohio, for plaintiffs-appellants.

Todd S. Swatsler, Michael H. Carpenter, Stephanie A. Brett (argued), Jones, Day, Reavis & Pogue, Columbus, Ohio, for defendant-appellee.

Before MERRITT, Chief Judge, and GUY and NORRIS, Circuit Judges.

MERRITT, Chief Judge.

The plaintiff-appellant, Ralph McAdoo, has appealed the District Court's grant of summary judgment in favor of The Dallas Corporation in his diversity product liability suit. The District Court held that McAdoo was collaterally estopped from relitigating the issue of causation in

---

his federal product liability suit because he lost a jury verdict which decided the same causation issue in a procedurally fair prior state court proceeding against his employer. McAdoo argues on appeal that the District Court misapplied the Ohio law of collateral estoppel which, he says, creates an absolute requirement of mutuality of parties, *i.e.*, that the party invoking collateral estoppel must be bound by the prior judgment even if the judgment had been adverse. We do not so read Ohio law. *Goodson v. McDonough Power Equipment, Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978 (1983), appears to require mutuality in an *offensive* collateral estoppel case, but this is a *defensive* collateral estoppel case. Ohio law provides for the non-mutual application of defensive collateral estoppel where the plaintiff has had a full and fair opportunity to litigate the contested issue previously.

McAdoo was a tractor-trailer driver for Roadway Express, Inc. He joined Roadway in July, 1984, with nearly twenty years worth of experience in driving large trucks. Although he was being treated by a chiropractor for pain in his right thigh and buttock prior to his claimed accident, he maintains that he injured his back on January 29, 1986, while working his regular shift for Roadway and that the injury resulted from his use of a jiff lock axle designed and manufactured by Dallas. McAdoo claims that he slipped while connecting two trailers together and was pulled violently down to the ground by the weight of the improperly designed jiff lock axle.

McAdoo offers the same factual narrative in federal court as he did in his state court action. Briefly put, he slipped while connecting two trailers together on January 29, 1986, but he completed his shift and did not report his accident to Roadway. Subsequently, he complained about pain in his right knee and thigh, and he visited four doctors without informing any of the doctors about his work-related accident. He visited a chiropractor twice—February 3 and February 10, 1986. He visited a general practitioner on February 17, 1986, who examined his right knee and prescribed pain-killing drugs. He was admit-

ted as an emergency patient to the hospital on February 21, 1986, after complaining about further pain in his right knee. The attending doctor examined his right thigh and released McAdoo but suggested that McAdoo consult with another doctor. McAdoo visited a neurologist on February 24, 1986, who conducted further tests. The neurologist, Dr. Winer, determined after further tests on March 6, 1986, that McAdoo suffered from a herniated disc in his back. Winer admitted McAdoo to Euclid General Hospital on March 6, 1986, for traction and general physical therapy. Winer and an orthopedic surgeon, Dr. Posch, concluded that surgery was unnecessary and released McAdoo two weeks later. McAdoo mentioned his jiff lock axle accident to Dr. Posch, the last doctor, sometime during his hospital stay, but not to Roadway. McAdoo filed a workers' compensation claim after his release from the hospital, and he chose the January 29th date as his injury date because he remembered the date from his logbook—which had no specific notation for January 29th.

The Cuyahoga Court of Common Pleas on April 18, 1988, rendered a jury verdict for Roadway in December, 1988. The jury concluded McAdoo was not entitled to workers' compensation benefits. McAdoo did not appeal the decision.

McAdoo also filed this action in state court in 1988 against Dallas for injuries suffered while using its product. Dallas removed this action properly to federal district court. The District Court granted summary judgment to Dallas in July, 1990, on grounds of collateral estoppel. The District Court reasoned that McAdoo had fully and fairly litigated the issue of causation in the prior state court proceeding and thus was precluded from relitigating this issue. McAdoo has appealed.

Summary judgment may be granted by a district court upon a showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Our standard of review for a grant of summary judgment is *de novo*. *Pinney Dock & Transport Co. v. Penn Central Corpora-*

*tion,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). Although all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, summary judgment may be granted where the evidence is merely colorable or is not significantly probative. *Matsushita Electric Industrial Co. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Both McAdoo and Dallas assume that some variant of the Ohio law of collateral estoppel should apply to this case, but this assumption is unsupported by a full analysis of the problem. Although some commentators have considered the application of collateral estoppel to be a matter which concerns the decisional process in federal court and which therefore could be resolved by federal law, *see Restatement (Second) of Judgments* § 86 comment g (1980); Degnan, *Federalized Res Judicata,* 85 Yale L.J. 741, 773 (1976), the U.S. Supreme Court's decision in *Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), interprets 28 U.S.C. § 1738[1] as requiring us to adopt the same doctrine of collateral estoppel as the state in which the earlier judgment was rendered. Although *Migra* is a § 1983 case, the same statute is applicable in a diversity case under the Supreme Court reasoning and thus older Sixth Circuit cases are no longer decisive on the question. *Compare Davis v. McKinnon & Mooney,* 266 F.2d 870 (6th Cir.1959) (opinion does not discuss preclusive effect of Ohio judgment under state law but appears to rely on federal common law as the source of its principle) *with Mackris v. Murray,* 397 F.2d 74, 75 (6th Cir.1968) ("Substantive Michigan law controls resolution of the legal question presented."). The Sixth Circuit had not articulated a clear rule for the application of collateral estoppel in diversity cases before *Migra,* and other circuits followed a similar pattern. *See* Annotation, *State or Federal Law as Governing Applicability of Doctrine of Res Judicata or Collateral Estoppel in Federal Court Action,* 19 A.L.R. FED. 709 (1974 & supp.) (collecting cases applying state and federal doctrines of collateral estoppel).

■ Thus, we turn to the law of Ohio to determine the preclusive effect it would give to its prior judgment against McAdoo. McAdoo argues that Ohio law requires mutuality of parties. The party invoking collateral estoppel, he says, must be bound by the prior judgment even if the judgment had been adverse. He argues further that the Ohio Supreme Court's decision in *Goodson v. McDonough Power Equipment, Inc.,* 2 Ohio St.3d 193, 443 N.E.2d 978 (1983), forecloses any attempt by Dallas to preclude him from relitigating the issue of causation in his product liability action.

*Goodson* was a different sort of product liability action, however. In *Goodson,* the Goodsons' daughter lost her leg in a lawn mower accident, and they attempted to prevent the defendant manufacturer from litigating the liability issue based on judgments against the manufacturer in similar cases in other jurisdictions. The Goodsons attempted to deploy collateral estoppel *offensively,* and the Ohio Supreme Court refused to allow this type of collateral estoppel. The U.S. Supreme Court exhibited a similar caution earlier when presented with the question of offensive collateral estoppel, and it required a case-by-case analysis to safeguard defendants' due process concerns rather than to allow its indiscriminate use. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The *Goodson* court balanced the possible gains in judicial efficiency resulting from the application of offensive collateral estoppel against defendants' due pro-

1. Using language from the Full Faith and Credit Clause, Article IV, § 1, this statute provides:

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

cess interests and concluded that careful case-by-case analysis would yield small gains in efficiency only. Consequently, the *Goodson* court chose to retain a general requirement of mutuality in cases involving the use of collateral estoppel.[2]

The *Goodson* court observed, however: We therefore opt to adhere to such principle [mutuality] as a general proposition, while realizing that there may well be other cases in which there are presented additional exceptions which could be acceptable to this court upon the basis of serving justice within a framework of sound public policy.

443 N.E.2d at 987.

Thus, the Ohio law with regard to the use of offensive collateral estoppel is clear. Mutuality is normally required.

Ohio's law with regard to the use of defensive collateral estoppel is not clear, especially in the wake of *Goodson's* general rule and its equally abstract provision for exceptions. We find no Ohio case requiring mutuality in a defensive collateral estoppel case. The Ohio Supreme Court has not considered a case involving defensive collateral estoppel since *Goodson*, and McAdoo's case differs from earlier cases. In *Trautwein v. Sorgenfrei*, 58 Ohio St.2d 493, 391 N.E.2d 326 (1979), a case relied upon by McAdoo, the Ohio Supreme Court collaterally estopped property owners from relitigating the issue of property damage liability because the plaintiffs had omitted the municipality as a defendant in the prior proceeding, and the court determined that the city was the real party in interest in both proceedings. 391 N.E.2d at 331. The case does not help McAdoo's argument. In *Whitehead v. General Telephone*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969), a personal injury case, the Ohio Supreme Court held that the defendant telephone company could not collaterally estop the injured minor simply because the child's parents lost a derivative action with regard to the same accident in a prior proceeding. The child had been unrepresented and had not partic-

ipated in the prior proceeding. 254 N.E.2d at 15.

Thus, each case affirmed the importance of enjoying the opportunity to present one's case fully and fairly. If the issue had been fully litigated, however, then the court's emphasis shifted to the importance of finality in judgments. Or, as the *Goodson* court observed:

The main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be "heard" in the due process sense. Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action.

443 N.E.2d at 985.

We do not read Ohio law as insisting on mutuality in defensive collateral estoppel cases, but we think Ohio law does insist on "a fair opportunity to fully litigate" the issue.

Mutuality aside, McAdoo has not suggested why collateral estoppel is not appropriate here. *Goodson* emphasized that a party should not be collaterally estopped from relitigating an issue when its subsequent use could not be foreseen or where the party had little knowledge or incentive to litigate fully and vigorously. 443 N.E.2d at 986. Here McAdoo had every incentive to litigate the issue whether he was injured at work in the prior proceeding. Roadway conceded that McAdoo had an injured back, but argued that he had not been injured at work. Since the workplace was the only place where McAdoo could have been injured using a jiff lock axle, the importance of the prior proceeding was plain to McAdoo. He added nothing to his factual narrative during the discovery process preceding the District Court's grant of

---

**2.** A good statement of the reasons for a distinction between offensive and defensive collateral estoppel is found in Currie, *Mutuality of Collat-* *eral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan.L.Rev. 281, 289–308 (1957).

summary judgment. *See McCrory v. Children's Hospital,* 28 Ohio App.3d 49, 501 N.E.2d 1238, 1244 (1986) (*defensive* collateral estoppel) ("The specific issues of proximate causation of plaintiff's injury and damages ... were fully, fairly, and necessarily adjudicated....").

Indeed, Justice White summarized the basis for defensive collateral estoppel best in his opinion for a unanimous Court in *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971):

> The cases and authorities ... connect erosion of the mutuality requirement to the goal of limiting relitigation of issues where that can be achieved without compromising fairness in particular areas. The courts have often discarded the rule while commenting on crowded dockets and long delays preceding trial. Authorities differ on whether the public interest is a sufficient ground in and of itself for abandoning mutuality, but it is clear that more than crowded dockets is involved. The broader question is whether it is any longer tenable to afford a litigant more than one full and fair opportunity for judicial resolution of the same issue.

402 U.S. at 328, 91 S.Ct. at 1442.

We follow Justice White's analysis. Although court congestion remains a serious problem throughout our federal system, we affirm the District Court not for reasons of this sort but because McAdoo has had a full and fair opportunity to litigate whether he was injured at work or not. Accordingly, the decision of the District Court is AFFIRMED.