**Michael B. BUHRMAN, Plaintiff,**

v.

**Reginald J. WILKINSON, et al., Defendant.**

**No. C–3–01–359.**

United States District Court, S.D. Ohio, Western Division.

March 31, 2003.

---

Michael B. Buhrman, North Central Correctional Institution, Marion, OH, for Plaintiff.

John H. Jones, Scott M. Campbell, Ohio Attorney General, Corrections Litigation, Columbus, OH, Pamela M. Stanek, United States Attorney's Office, Dayton, OH, Elise W. Porter, Ohio Attorney General, Chief Counsel's Staff Section, Columbus, OH, Gregory Paul Dunsky, United States Attorney's Office, John Alan Cumming, Montgomery County Prosecutor's Office, Jeffrey Charles Turner, Surdyk Dowd & Turner Co. LPA, Dayton, OH, for Defendant.

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR RELIEF FROM ORDER AND JUDGMENT (DOC. # 120); ORDER REACTIVATING CASE; DECISION AND ENTRY ADOPTING IN PART AND DECLINING TO ADOPT IN PART THE REPORT AND RECOMMENDATIONS (DOC. # 111) AND AMENDED REPORT AND RECOMMENDATIONS (DOC. # 113) OF THE UNITED STATES MAGISTRATE JUDGE; REASONING SET FORTH HEREIN; OBJECTIONS OF PLAINTIFF TO SAID JUDICIAL FILINGS (DOC. # 119) SUSTAINED IN PART AND OVERRULED IN PART; DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF DEFENDANT DAIDONE (DOC. # 74), SUSTAINING MOTION TO DISMISS OF DEFENDANTS SMITH, COZZA AND WALKER (DOC. # 75), SUSTAINING MOTION TO DISMISS OF DEFENDANTS LOCKHART AND BURNHAM (DOC. # 82), OVERRULING, AS MOOT, ALTERNATIVE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS LOCKHART AND BURNHAM (DOC. # 82), SUSTAINING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS GHEE, WILKINSON, BEDRA, CAPOTS, CROCKETT, DENTON, GRINNER, HUDSON, JONES, MATTHEWS, DOBY, WIDMER, MITCHELL, MULLIGAN AND UPPER (DOC. # 97), SUSTAINING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT SCHENCK (DOC. # 99) AND OVERRULING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS LOCKHART, SMITH, COZZA, SCHENCK, DAIDONE, BURNHAM AND WALKER (DOC. # 106); THE PLAINTIFF'S AMENDED

AND SUPPLEMENTAL COMPLAINT IS NOT TO BE DISMISSED AT THIS TIME; UNITED STATES MAGISTRATE JUDGE TO ESTABLISH A BRIEFING SCHEDULE ON QUESTION OF WHETHER NOTICE WAS GIVEN TO PLAINTIFF OR COUNSEL OF THE FULL BOARD HEARING OF OCTOBER 31, 2001, AND THE LEGAL EFFECT OF SAME; THIS CAUSE REMAINS ACTIVE ON THE COURT'S DOCKET RECORDS

RICE, Chief Judge.

Plaintiff Michael B. Buhrman is incarcerated at the Lima Correctional Institution. He brings this suit *pro se* against a number of county, state and federal officials, under 42 U.S.C. §§ 1983 & 1985(3) and the principle of law announced in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] The matter is now before the Court on the Plaintiff's Objections to Magistrate Judge's Report and Recommendations and Magistrate Judge's Amended Report and Recommendations (Doc. # 119). The Court had previously entered judgment in favor of the Defendants, on the presumption that the Plaintiff had not filed his Objections to the aforementioned judicial filings in a timely manner. (*See* Doc. # 117.) Because that presumption was erroneous, the Court now sustains the Plaintiff's Motion for Relief from Order and Judgment (Doc. # 120), and vacates its previous order adopting said judicial filings (Doc. # 116). The cap-

tioned cause is reactivated upon the docket records of this Court.

In her Report and Recommendations (Doc. # 111) and Amended Report and Recommendations (Doc. # 113), the United States Magistrate Judge sustained the Motion to Dismiss of Defendant Daidone (Doc. # 74), sustained the Motion to Dismiss of Defendants Smith, Cozza and Walker (Doc. # 75), sustained the Motion to Dismiss of Defendants Lockhart and Burnham (Doc. # 82),[2] sustained the Motion for Summary Judgment of Defendants Ghee, Wilkinson, Bedra, Capots, Crockett, Denton, Grinner, Hudson, Jones, Matthews, Doby, Widmer, Mitchell, Mulligan and Upper (Doc. # 97), sustained the Motion for Summary Judgment of Defendant Schenck (Doc. # 99) and overruled the Plaintiff's Motion for Leave to Dismiss Defendants Lockhart, Smith, Cozza, Schenck, Daidone, Burnham and Walker (Doc. # 106).

The Plaintiff raises no objection to the facts set forth in the Report and Recommendations and the Amended Report and Recommendations, only to the legal analysis and the conclusions reached. Based in part upon the reasoning and citations of authority set forth by the United States Magistrate Judge in said judicial filings, and in part upon the separate reasoning and citations of authority set forth herein, the conclusions set forth within the aforementioned judicial filings are hereby adopted. The Plaintiff's Objections to same will therefore be overruled, with one exception which shall be noted.

**1.** Strangely, the Plaintiff argues in opposing the motion to dismiss of the federal defendants (Doc. # 82) that "this action is *NOT* a *Bivens* action." (Doc. 90 at 10 (emphasis in original).) However, because § 1983 does not apply to acts of federal officials, the Court will ignore this argument for purposes of giv-

ing him the fullest opportunity to make out a case against Defendants Lockhart and Burnham, the federal defendants in this case.

**2.** The Alternative Motion for Summary Judgment of Defendants Lockhart and Burnham (Doc. # 82) was overruled as moot.

## I. *Standards for Analysis*

Pursuant to Rule 12(b)(6), the Court may only consider the facts as pled in the Complaint in deciding whether the Plaintiff has stated a valid claim. *See Nelson v. Miller,* 170 F.3d 641, 649 (6th Cir.1999). "Where actionable facts are alleged, the Court must not assess the merits of the cause or the probability of success, which are matters unrelated to the sufficiency of the complaint." *McDaniel v. Rhodes,* 512 F.Supp. 117, 120 (S.D.Ohio 1981). "A court should not dismiss a plaintiff's complaint under Rule 12(b)(6) unless, after construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true, the court determines that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Nelson,* 170 F.3d at 649 (citation omitted); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Complaints are construed even more liberally than usual when a plaintiff is proceeding *pro se. See Black v. Parke,* 4 F.3d 442, 448 (6th Cir. 1993).

As in the motion to dismiss context, in ruling on a motion for summary judgment, the Court will construe the facts and all reasonable inferences which can be drawn therefrom in a light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, unlike with a motion to dismiss, a party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## II. *Factual Background*

Although the Court adopts the recitation of the facts set forth in the United States Magistrate Judge's Report and Recommendations, it will repeat the pertinent facts herein in order to provide some context for its legal reasoning, which differs in some respects from that set forth by the Magistrate Judge. It will first set forth the facts as alleged in the Plaintiff's Amended and Supplemental Complaint (Doc. # 67), for purposes of ruling on the respective motions to dismiss.

Preliminarily, the Court will note that, at bottom, what the Plaintiff is seeking is another review of his parole eligibility by the Ohio Adult Parole Authority ("Parole Authority"). With that in mind, the Court notes that the Parole Authority has promulgated guidelines to help promote consistency and fairness in parole eligibility determinations. *See Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 780 N.E.2d 548, 550 (2002). In general, after considering a number of factors, as allowed by law, the Parole Authority assigns a given inmate to one of thirteen offense categories, which in turn is determinative of one's parole eligibility. *See id.* The Plaintiff argues that he was assigned to the wrong offense category.

In February of 1993, the Plaintiff entered into a multi-jurisdictional plea bargain agreement with prosecutors from Montgomery and Greene Counties, Ohio, the Ohio Attorney General's Office and the United States Attorney's Office for the Southern District of Ohio (herein, "Prosecutor Defendants"). He pled guilty to

three counts of involuntary manslaughter in Greene County and one count of engaging in a pattern of corrupt activity in Montgomery County, for which he received an aggregate sentence of 13 to 55 years in prison. In consideration for his cooperation, the respective prosecuting attorneys agreed to write favorable letters on his behalf to the Parole Authority, and to refrain from writing negative letters to his detriment. In May of 1993, Defendant Robert Smith, of the Ohio Attorney General's Office, and Defendant John Cozza, of the Ohio Organized Crime Investigation Commission ("OCIC"), wrote unfavorable letters to the Parole Authority, containing false information. These letters were placed in the Plaintiff's parole file. Similar letters were written and submitted by Smith, Defendant Robert Burnham, of the FBI, and Defendant Stephen Walker, also of the OCIC, in early 2001, the last of which was submitted and placed into the Plaintiff's parole file on April 10, 2001.

On April 18, 2001, the Plaintiff had a scheduled parole review hearing continued for a 60–day period. On April 26, 2001, Defendant Daidone submitted another unfavorable letter to the Parole Authority. On June 20, 2001, the Plaintiff had his parole review hearing continued for another 60–day period, and was told by Defendant Richard Spence, of the Parole Authority, that it would "definitely be in his best interests" to resolve his federal litigation. On August 9, 2001, the Plaintiff filed the herein action in the Eastern Division, in Columbus, originally docketed as 2:01–CV–766. (*See* Doc. # 1.) The case was transferred to this Court on August 23, 2001. (*See* Doc. # 4.) On August 16, 2001, the Plaintiff had his parole hearing continued for yet another 60–day period, and Defendant David Doby, of the Parole Authority, appeared agitated that a federal action had been filed on the Plaintiff's behalf.

At his parole review hearing, finally held on October 18, 2001, after reviewing the various unfavorable letters that had been submitted by the Prosecutor Defendants, the Parole Authority informed the Plaintiff that it had been "predetermined" that his case would have to be considered at a full board hearing, at which time his offense category would be determined pursuant to the parole guidelines. At that time, he requested that he and his attorney be notified of when that hearing would be held. As it happened, the full board hearing was held on October 31, 2001, at which point the Plaintiff was assigned to the highest offense category, based on a number of factors. Neither the Plaintiff nor his attorney was notified of this hearing.

In addition to the facts set forth in the Amended and Supplemental Complaint, the Court can take judicial notice of the following facts. *See* Fed.R.Evid. 201(b). On April 17, 2001, the Plaintiff filed a complaint in this Court, Case No. 3:01–CV–161, against Defendants Smith, Cozza and Defendant Margarette Ghee, of the Parole Authority. (Doc. # 1 in Case No. 3:01–CV–161.) Ghee was subsequently dismissed, with prejudice, on July 6, 2001. (Doc. # 11 in Case No. 3:01–CV–161.) On October 1, 2001, Defendant Gregory Lockhart, of the United States Attorney's Office for the Southern District of Ohio, Defendant Leon Daidone, of the Montgomery County Prosecutor's Office, and Defendant William Schenck, of the Greene County Prosecutor's Office, were added, via an amended complaint, as Defendants in that case. (Doc. # 27 in Case No. 3:01–CV–161.) The facts of which the Plaintiff complained in that case were identical to the facts of which he complains in this case, insofar as it relates to the Prosecutor Defendants and Cozza. On December 27, 2001, Case No. 3:01–CV–161 was voluntarily dismissed, without prejudice. (Doc. # 61 in Case No. 3:01–CV–161.)

On December 18, 2001, the Plaintiff filed what was captioned a Petition to Vacate or Set Aside Sentence (Post–Conviction Relief), in Case No. 92–CR–1295, in the Common Pleas Court of the Honorable Michael T. Hall, Montgomery County, Ohio. He stated the following two claims for relief:

(1) The Petitioner hereby claims that the respondent(s) have breached the plea agreement entered into relevant to the Plaintiff's [sic] conviction(s) and sentence(s) through their acts and/or omissions by failing to provide the Petitioner and Ohio Adult Parole Authority with letters of "favorable consideration" at the time that the Petitioner first becomes eligible for release consideration, which constitutes a violation of the Petitioner's rights under the Fifth and Fourteenth Amendments to the Constitution of the United States.

(2) The Petitioner hereby claims that the Respondent(s) have breached the plea agreement entered into relevant to the Petitioner's conviction(s) and sentence(s) through their acts and/or omissions by submitting four (4) letters to the Ohio Adult Parole Authority, which letters contained adverse and negative information and/or recommendations regarding the Petitioner contrary to the spirit and intent of the Respondents' promise to provide letters of "favorable consideration" at the time that the Petitioner first becomes eligible for parole release consideration, which constitutes a violation of the Petitioner's rights under the Fifth and Fourteenth Amendment[s] to the Constitution of the United States.

On August 9, 2002, Judge Hall, in no uncertain terms, held that the Defendants who were parties to his plea agreement had no obligation to provide letters of "favorable consideration." *See* Case No. 92–CR–1295 (Mont.Cty.C.P.C. August 9, 2002), Decision, Order, and Entry Overruling Defendant's Petition to Vacate or Set Aside Sentence; Sustaining Plaintiff's Motion for Summary Judgment, at 5–6 ("Collateral Decision"). Indeed, Judge Hall also found that it was the Plaintiff (Petitioner/Defendant therein) who had failed to cooperate with the various government entities (Prosecutor Defendants herein), and who had in fact breached the plea agreement. *See id.* That judgment was affirmed by the Montgomery County Court of Appeals on March 28, 2003. *See* Case No. CA 019535 (Mont.Cty.Ct.App. March 28, 2003).[3]

III. *Analysis*

As the Magistrate Judge noted, without objection from the Plaintiff, the bulk of the Plaintiff's claims fall into three groups. *First,* he claims that the Prosecutor Defendants breached the plea agreement, by (1) failing to write favorable letters on his behalf to the Parole Authority, and (2) actually writing negative letters to his detriment to the Parole Authority. *Second,* he claims that the Parole Authority violated his First Amendment right and right of due process by (1) delaying his parole hearing, and ultimately classifying him in the wrong parole category under Ohio law and the Ohio parole guidelines, in retaliation for his having filed a federal civil action,[4] (2) failing to give him notice of his

---

**3.** An identical petition was filed by the Plaintiff in the Greene County Common Pleas Court, in Case No.1993 CR 0777. The Court is not aware of the status of that petition.

**4.** The first alleged indication that the Parole Authority did not like the fact that he had

filed a federal claim occurred on April 18, 2001. (Amend. & Supp. Compl. ¶ 57.) At that time, the case at bar had not yet been filed, so Plaintiff must have been referring to Case No. 3:01–CV–161, which was filed on April 17, 2001.

full Parole Authority hearing and (3) considering the negative letters submitted by the Prosecutor Defendants. *Third,* he claims that the Parole Authority violated his First Amendment right and right of due process by classifying him in the wrong parole category under Ohio law and the Ohio parole guidelines in retaliation for his having filed his federal civil action. He also claims, under 42 U.S.C. § 1985(3), that the Defendants conspired to violate his rights in the manners just discussed.

■ 42 U.S.C. § 1983 provides a civil cause of action to any citizen of the United States against any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991) (citations omitted). In order to succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that he was subjected to this deprivation by a person acting under the color of state law. *See Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir.2000) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). A similar remedy exists against federal officials for unconstitutional acts taken under color of federal law. *See Bivens, supra.*

■ On the face of the Plaintiff's Amended and Supplemental Complaint,

each individual was named in both his individual and official capacities. Although the Court agrees with the United States Magistrate Judge that the Plaintiff's Amended and Supplemental Complaint can be construed as requesting money damages, the Plaintiff stresses throughout his memoranda in opposition to the Defendants' various motions that he is not seeking any such damages. Therefore, the various immunities raised by the Defendants appear to be immaterial, given that such immunities are inapplicable where the only relief sought is injunctive in nature. Local and state officials can be held individually liable, and subject to injunctive relief, for actions undertaken within the scope of their official capacities. *See Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[5] Federal officials, too, can be held liable for "constitutional torts" under the theory set forth in *Bivens.* Indeed, in order for § 1983 or *Bivens* to have any applicability, it must be recognized, and has been recognized, that individuals who act in an alleged unlawful manner within the scope of their official duties can be held liable in their individual capacities. *See Hafer,* 502 U.S. at 27–28, 112 S.Ct. 358. All the "individual capacity" designation suggests is that the individual, not the government, should be held liable, irrespective of the capacity in which the alleged unlawful act was committed. In short, the capacity in which one commits an alleged unlawful act does not dictate the capacity in which that actor must be sued. *See id.* at 26, 112 S.Ct. 358. Thus,

---

**5.** Where a plaintiff seeks to hold a state official individually liable for money damages, a determination must first be made by the Ohio Court of Claims that the official was acting manifestly outside the scope of his or her employment. *See* Ohio Rev.Code § 2743.02(F); *State ex rel. Sanquily v. Court*

*of Common Pleas of Lucas County,* 60 Ohio St.3d 78, 573 N.E.2d 606, 609 (1991); *Cameron v. Children's Hosp. Med. Ctr.,* 131 F.3d 1167, 1171 (6th Cir.1997); *Haynes v. Marshall,* 887 F.2d 700, 705 (6th Cir.1989). Such a scenario is not at issue herein.

whether any of the individuals would otherwise be entitled to immunity from suit is irrelevant. Given that only injunctive relief is sought, nothing bars the Plaintiff from pursuing his claims against the defendants in their individual capacities for acts undertaken under color of their official offices.[6]

As for whether the Plaintiff has alleged constitutional violations, his pleadings raise the following questions: (1) can a § 1983 claim or *Bivens* claim be based on a breach of a plea agreement?; (2) can such actions be based on a state Parole Authority's failure to adhere to state law and state parole guidelines?; and (3) can such actions be based on a state parole board's act of retaliating against a defendant for exercising a First Amendment right, to wit: filing a civil action against government officials in federal court?

■■■ An action in federal court challenging the terms of a conviction or sentence rendered in a state court must be brought as an action for a writ of habeas corpus, under 28 U.S.C. § 2254. *See Heck v. Humphrey*, 512 U.S. 477, 481, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Thus, claims against state officials for breach of plea agreements, implicating, as such claims do, the terms of one's conviction or sentence, must be raised pursuant to a habeas petition. *See, e.g., Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

Accordingly, the Court adopts the United States Magistrate Judge's Report and Recommendations and Amended Report and Recommendations as they relate to

the Motion to Dismiss of Defendant Daidone (Doc. # 74), the Motion to Dismiss of Defendants Smith, Cozza and Walker (Doc. # 75), the Motion to Dismiss of Defendants Lockhart and Burnham (Doc. # 82)[7] and the Motion for Summary Judgment of Defendant Schenck (Doc. # 99). As pointed out by the United States Magistrate Judge, a challenge to state officials' compliance with the terms of a plea agreement, implicating as it does the terms of one's sentence, is something that must be raised pursuant to a habeas action.

■■■ In addition, the Court will add that even if a § 1983 claim had been stated against these Defendants, it would barred at this point as a matter of collateral estoppel. Collateral estoppel (also now referred to as issue preclusion) rests upon a showing of four elements: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *See Smith v. Securities and Exchange Comm'n*, 129 F.3d 356, 362 (6th Cir.1997). Those elements are met in this case. The Plaintiff raised the identical claims before Judge Hall in the Montgomery County Common Pleas Court, at which point they were found to lack merit. What is more, Judge Hall's decision has just recently been upheld on appeal. Thus, for this reason, too, the Motion to Dismiss of

---

6. However, in the event there is any lingering doubt as to what relief the Plaintiff is seeking, the Court adopts the United States Magistrate Judge's findings and conclusions on the various immunity defenses to the extent the Plaintiff might claim at some later time that he was seeking money damages.

7. The Court also adopts the Report and Recommendations as to the recommendation to overrule, as moot, the Alternative Motion for Summary Judgment of Defendants Lockhart and Burnham (Doc. # 82).

Defendant Daidone (Doc. # 74), the Motion to Dismiss of Defendants Smith, Cozza and Walker (Doc. # 75), the Motion to Dismiss of Defendants Lockhart and Burnham (Doc. # 82) and the Motion for Summary Judgment of Defendant Schenck (Doc. # 99), would have to be sustained.[8]

Having said this, the Court also adopts the Report and Recommendations as it relates to the Plaintiff's Motion for Leave to Dismiss Defendants Lockhart, Smith, Cozza, Schenck, Daidone, Burnham and Walker (Doc. # 106). In adopting the Report and Recommendations, the Court stresses that were the Plaintiff to be permitted to voluntarily dismiss these Defendants, it would be with prejudice in any event as to all of them but Burnham and Walker, given that the other five Defendants were already once dismissed from Case No. 01–CV–161. *See* Fed.R.Civ.P. 41(a)(1).

The Court will now consider the Report and Recommendations as it relates to the Plaintiff's claims against the Parole Authority Defendants.

 It should go without saying that if a parole board acts against a prisoner because he exercised his right to file a civil complaint, such conduct is actionable as a violation of the First Amendment. *See Bell v. Johnson,* 308 F.3d 594, 612 (6th Cir.2002); *Thaddeus–X v. Blatter,* 175 F.3d 378, 388 (6th Cir.1999) (stating that

"the First Amendment interest that is of central importance to prisoners is their right to access the courts, grounded in the Petition Clause"). Although the Plaintiff has stated a retaliation claim under the First Amendment, the Court adopts the Report and Recommendations set forth by the United States Magistrate Judge, insofar as it relates to this claim. As pointed out by the Magistrate Judge, the Parole Authority Defendants adduced facts demonstrating that the Parole Authority's repeated continuations of his parole eligibility hearing were scheduled, in fact, at the requests of his counsel. (*See* Spence Aff., Doc. # 97 at Ex. E; Authenticated Records, Doc. # 97 at Ex. F.) They also adduced facts demonstrating that their determination of his offense category was undertaken with regard to the various factors which they are entitled to consider under the law of Ohio, none of which the Court need discuss herein. (*See* Spence Aff., Authenticated Records & Bedra Aff., Doc. # 97 at Ex. G.) Because the Plaintiff has not substantiated his allegations that the Parole Authority retaliated against him for filing his action(s) in federal court with facts as would be admissible in evidence, summary judgment shall be granted on his retaliation claim. *See* Fed. R.Civ.P. 56(e).[9]

 Regarding his allegations that the Parole Authority Defendants violated

---

8. Even if the Prosecutor Defendants other than Defendant Daidone were not parties to the Plaintiff's action upon which Judge Hall ruled in the Collateral Decision, captioned as it was under the criminal docket number in the Montgomery County Common Pleas Court, it would be appropriate to apply "defensive collateral estoppel" in this case. *See McAdoo v. Dallas Corp.,* 932 F.2d 522, 525 (6th Cir.1991) (recognizing that the Ohio Supreme Court does not insist upon the common law doctrine of "mutuality" before recognizing the applicability of collateral estoppel).

9. The Plaintiff states in his Objections that "the thrust" of his retaliation claim is that the Parole Authority considered the letters written by the Prosecutor Defendants. (Doc. # 119 at 14–15.) For the reasons already stated, these letters provide no basis for his cause of action. The Court considered a broader reading of his retaliation claim, as did the Magistrate Judge, out of consideration for the fact that he is entitled to a liberal construction of his Complaint.

his rights under the Due Process Clause of the Fourteenth Amendment, the Court first notes that prisoners in Ohio have no entitlement to parole; whether such should be granted is left to the discretion of the Parole Authority. *See* Ohio Rev. Code § 2967.03; *State ex rel. Blake v. Shoemaker*, 4 Ohio St.3d 42, 446 N.E.2d 169, 170 (1983). Where an incarcerated individual seeks a reduction in his duration of confinement, a habeas action is his sole means of relief in federal court. *See Preiser*, 411 U.S. at 489, 93 S.Ct. 1827. On the other hand, where an incarcerated individual is challenging not his conviction, sentence or duration of confinement, but rather the procedures and means used to make a parole eligibility determination (i.e., challenging the procedures used to reach a result, but not the result itself), the action *might* be cognizable under § 1983. *See Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *Heck*, 512 U.S.. at 482–83, 114 S.Ct. 2364; *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

In *Dotson v. Wilkinson*, 300 F.3d 661, 662–63 (6th Cir.2002), the Sixth Circuit Court of Appeals considered whether a § 1983 claim could lie on the plaintiff's allegations that his due process rights and right against *ex post facto* application of the laws had been violated by the Parole Authority, by virtue of that body's having applied revised parole guidelines retroactively to his case, the effect of which was that his parole eligibility date was postponed. The court held that such a claim could lie, reasoning that a prisoner's challenge to the determination of his parole *eligibility*, as opposed to the determination of his entitlement to parole itself, did not implicate the validity of his conviction or sentence, or bear directly on his duration of confinement. *Id.* at 666. In so holding,

the Sixth Circuit found that its holding was in accord with decisions of other federal courts of appeals. *Id.* at 665–66 (noting decisions rendered by the District of Columbia, Fifth, Seventh and Ninth Circuits). It also found that its holding was in accord with those Supreme Court decisions, cited above by this Court, which stand for the proposition that challenges to procedures which do not directly challenge the duration of one's confinement are different and distinct from direct challenges to one's duration of confinement. *Id.* at 663–65.

At the present, the Sixth Circuit is considering the holding in *Dotson en banc*. That being the case, the decision must be regarded as vacated under that court's local rules. *See* 6 Cir. R. 35(a). The Magistrate Judge nevertheless recognized the merits of the rationale employed in that case, and found it to be persuasive, particularly given the existence of the other courts of appeals that have held the same. The Court agrees, and does so for one additional reason, too. Under Ohio law, an individual can bring a civil action to challenge whether the Ohio Parole Authority violated the law in reaching a parole eligibility determination. *See Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 780 N.E.2d 548 (2002). It is only reasonable, then, to find that insofar as the alleged unlawful conduct constitutes a violation of a right guaranteed by the United States Constitution, a § 1983 action in federal court would be just as permissible as the civil action cognizable in the state court system.

It should be emphasized, however, that in *Dotson*, whether the Ohio Parole Authority had made the wrong determination of his parole eligibility, under the revised guidelines, was *not* at issue; the only question was whether it was proper, as a matter of constitutional law, to apply the revised guidelines in the first instance. The

Sixth Circuit remanded the case to the district court to address that question, in order to determine further whether the plaintiff was entitled to a parole hearing at an earlier date, based on the standard established by the former guidelines. Similarly, the issue in *Layne* was *not* whether the Parole Authority had correctly determined the plaintiffs' respective parole eligibility dates under the applicable guidelines, but whether it applied the correct law in doing so. As noted above, the parole guidelines in Ohio categorize thirteen offense categories, and parole eligibility is determined on the basis of the category into which an inmate is placed by the Parole Authority. The only question presented in *Layne* was whether the Parole Authority is required to determine an inmate's parole eligibility with reference to the charge for which he has been indicted or the charge for which he had ultimately plead guilty and been convicted. 780 N.E.2d at 553.

The Court highlights these two holdings to emphasize what is cognizable under § 1983, and what is not. A federal court *is not* to conduct a *de novo* review of the soundness of the Parole Authority's determination of an incarcerated individual's parole eligibility category. Eligibility determinations are the bailiwick of the Parole Authority, made pursuant to their guidelines, and they are entitled to deference. *See id.* at 555; *State ex rel. Lipschutz v. Shoemaker*, 49 Ohio St.3d 88, 551 N.E.2d 160 (1990). To challenge such determinations, it appears from the case law in Ohio that the Plaintiff's remedy is to file a writ of mandamus with the Ohio Supreme Court, to compel the Parole Authority to conduct another hearing. *See, e.g., Lipschutz, supra.* What the Court may do, as *Layne* and the rationale set forth in *Dotson* make clear, is determine whether the Parole Authority violated any constitutional rights in reaching its final determination. Absent such a showing, however,

whether the Parole Authority made the correct determination is not for this Court to say.

As noted earlier, the Plaintiff claims that the Parole Authority violated his right of due process by (1) repeatedly delaying his parole hearing, and ultimately classifying him in the wrong parole category under Ohio law and the Ohio parole guidelines, in retaliation for his having filed a federal civil action, (2) failing to give him notice of his "full board hearing" and (3) considering the negative letters submitted by the Prosecutor Defendants.

 The United States Magistrate Judge found that the Plaintiff's due process claim against the Parole Authority Defendants was cognizable under § 1983 in theory, but was barred in this case, given that the only relief sought by the Plaintiff is injunctive in nature. According to the Magistrate Judge, the proper remedy was to file a claim "at law" in the state court system. The Court respectfully declines to adopt this reasoning. It is true that the Plaintiff seeks injunctive relief, but this fact does not mean a federal court should refuse to exercise its own co-extensive jurisdiction to hear the action, if it is indeed one cognizable under § 1983. Indeed, the fact that the Plaintiff's action in this Court is for injunctive relief is inconsequential; this type of action is equitable by nature. Given that the relief sought is an order compelling the Parole Authority to conduct a new hearing in compliance with the Plaintiff's constitutional rights, it would be no less an action for injunctive relief in state court. *See Layne, supra* (considering action against the Parole Authority for injunctive and declaratory relief).

 This is not to say the Plaintiff's due process claim can survive summary judgment, for the bulk of its shortcomings have already been noted. To the

extent it is premised on the Parole Authority's having considered the negative letters from the various Prosecutor Defendants, it lacks merit, given the fact that Judge Hall, and now the Second District Court of Appeals of Ohio, found that the letters in question were perfectly legitimate for the Parole Authority's consideration under the terms of the plea agreement. Likewise, to the extent the due process claim is premised on the allegation that the Parole Authority retaliated against him for his having filed a federal claim, it must fail for the reasons the retaliation claim itself must fail. Finally, to the extent the due process claim is premised on the allegation that the Parole Authority wrongly classified him, it must fail, because § 1983 cannot be invoked to obtain review of that determination. It can hardly be argued that a prisoner in Ohio has a right under the Constitution or laws of the United States to a correct parole eligibility determination, given that parole in Ohio is completely discretionary. Again, his remedy appears to lie with the Ohio Supreme Court, pursuant to a writ of mandamus. *See Lipschutz, supra.*[10]

■ The only due process issue raised by the Plaintiff which gives the Court some trouble is his allegation that he and his attorney were not given notice of his full board hearing, held on October 31, 2001. Ohio Rev.Code § 5149.101(C) states that while a prisoner being considered for parole has no right to be present at a full board hearing, he may be represented by counsel. In addition, rules promulgated by the Ohio Department of Rehabilitation and Correction require notice of such a hearing to be sent to the "inmate or inmate representative." (*See* Doc. # 119 at Ex. D, at 4.) The Plaintiff has alleged that neither he nor his attorney received notice of the full board hearing, despite requesting that such be given. (Amend. & Supp. Compl. ¶¶ 63 & 64.) At the heart of the Due Process Clause is the right to be heard before one is stripped of life, liberty or property. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Woodard v. Ohio Adult Parole Auth.,* 107 F.3d 1178, 1183 (6th Cir.1997), *rev'd on other grounds,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). Although the State of Ohio has given the Plaintiff neither the right to parole nor the right to be present at a hearing where his parole eligibility is discussed, it has given him the right to be represented by counsel. It seems to this Court, then, that the State must honor the right which it has created, as a matter of due process.

The Parole Authority Defendants did not address this allegation in their Motion for Summary Judgment, and it was not an issue considered by the United States Magistrate Judge in her Report and Recommendations and Amended Report and Recommendations. By all means, it may

---

10. The Parole Authority Defendants argue that they are entitled to judgment on principles of *res judicata,* on the basis that Ghee was dismissed from Case No. 3:01–CV–161 with prejudice, and that the rest of them are in privity with her. (Doc. # 97 at 6–9); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2367, at 319–20 (2d ed.1994). The Court disagrees. That claim was filed on April 17, 2001. The Parole Authority Defendants did not engage in any alleged and actionable unlawful conduct until, at the earliest, April 18, 2001. Thus, Case No. 3:01–CV–161 did not originally contemplate the alleged unlawful actions of the Parole Board actionable herein, and by the time the complaint was amended in October of that year, Ghee had already been dismissed. Thus, while *res judicata* would preclude the Plaintiff from holding the Parole Authority Defendants liable for actions taken prior to April 17, 2001, at most those actions would stem from consideration of the letters from the Prosecutor Defendants, which the Court has already determined would not be actionable conduct.

not have appeared to present a separate ground for relief, in light of the Plaintiff's many other allegations, but it is not an issue which this Court believes can be overlooked without supplemental briefing. Because it was not briefed, the Court does not make any conclusions of law as of this time. Instead, the Court shall direct the United States Magistrate Judge to establish a briefing schedule on this issue, on which the relevant parties should be directed to file cross-motions for summary judgment, pursuant to which they may set forth facts regarding whether any such notice was given, as well as legal arguments on what the legal ramifications of the given facts should be.

In sum, regarding the Parole Authority Defendants' Motion for Summary Judgment, for the reasons set forth herein, the Court adopts the conclusion set forth in the Report and Recommendations of the United States Magistrate Judge, and sustains the Motion. The issue of whether the Plaintiff or his attorney received notice of the full board hearing, held on October 31, 2001, being one not raised by said Defendants in their Motion, does not affect the disposition of their Motion. It does, however, affect the Magistrate Judge's decision to dismiss the Plaintiff's Complaint. Because a genuine issue of material fact exists on this issue, and because it potentially raises a constitutional question, actionable under § 1983, the Plaintiff's Amended and Supplemental Complaint cannot be dismissed at this juncture. Thus, as to this particular aspect of the case, the Court respectfully declines to adopt the Report and Recommendations.

**11.** The Alternative Motion for Summary Judgment of Defendants Lockhart and Burnham (Doc. # 82) is overruled as moot.

**12.** Inherent to these rulings is that the Court adopts the United States Magistrate Judge's

## IV. *Conclusion*

For the reasons stated, the Court rules as follows:

1. The Plaintiff's Motion for Relief from Order and Judgment (Doc. # 120) is SUSTAINED, and this case is reactivated for consideration of the Plaintiff's Objections to the Report and Recommendations and Amended Report and Recommendations of the United States Magistrate Judge (Doc. # 119).

2. For the reasoning set forth above, the conclusions set forth in the United States Magistrate Judge's Report and Recommendations (Doc. # 111) and Amended Report and Recommendations (Doc. # 113) are ADOPTED as to each of the Defendants' respective motions at issue herein. Therefore, the Motion to Dismiss of Defendant Daidone (Doc. # 74), the Motion to Dismiss of Defendants Smith, Cozza and Walker (Doc. # 75), the Motion to Dismiss of Defendants Lockhart and Burnham (Doc. # 82),[11] the Motion for Summary Judgment of Defendants Ghee, Wilkinson, Bedra, Capots, Crockett, Denton, Grinner, Hudson, Jones, Matthews, Doby, Widmer, Mitchell, Mulligan and Upper (Doc. # 97) and the Motion for Summary Judgment of Defendant Schenck (Doc. # 99) are SUSTAINED, and the Plaintiff's Motion for Leave to Dismiss Defendants Lockhart, Smith, Cozza, Schenck, Daidone, Burnham and Walker (Doc. # 106) is OVERRULED. To the extent they relate to these motions, the Plaintiff's Objections are OVERRULED.[12]

3. Said judicial filings are not adopted insofar as the Plaintiff's Amended and

Report and Recommendations and Amended Report and Recommendations with respect to the Plaintiff's conspiracy claim, under 42 U.S.C. § 1985(3). The Court agrees that it lacks merit.

Supplemental Complaint was dismissed in its entirety.

4. A genuine issue of material fact exists with regard to whether the Plaintiff or his attorney received notice of the full board hearing of October 31, 2001. Because this issue potentially raises a constitutional question, actionable under § 1983, the United States Magistrates Judge is to establish a briefing schedule, per the terms set forth above. In the meantime, to the extent they relate to this issue, the Plaintiff's Objections are SUSTAINED.

The captioned cause remains active on the docket records of this Court. Given that the single remaining issue implicates only the Parole Authority Defendants, all other Defendants are hereby dismissed with prejudice.